**ROBERT W. KLOTZ**
**CONSULTANT**
**3210 Havenwood Court**
**Edgewater, Maryland 21037**
**(410) 798-6868**

Fax.: (410) 798-0371                                                                    E-mail: rklotz1026@aol.com

January 8, 2007

Ms. Donna Williams Rucker, Esquire
Law Offices, Suite 501
8401 Colesville Road
Silver Spring, Maryland 20910-3349

    Re: *Latasha M. Cotton v. District of Columbia Government, et al.*

Dear Attorney Rucker:

    The following report is submitted as required by Rule 26(a)(2) of the Federal Rules of Procedure.

    My background and experience are contained in my resume which is enclosed as Attachment #1. Articles that I have authored over the past ten years are included therein also.

    My Fees for work performed are contained in my Fee Schedule which is enclosed as Attachment #2.

    A list of cases in which I have been deposed, testified in court, or both is enclosed as Attachment #3.

    A listing of the materials I have reviewed, that have been received from you and from my own resources are enclosed as Attachment #4.

    You have requested I review the materials you forwarded me regarding an incident involving Ms. Latasha M. Cotton (hereafter, Cotton) and members of the Washington, D.C. Metropolitan Police Department on June 7, 2004. You requested I review the actions of the officer(s) involved and opine as to the propriety of their actions toward Cotton considering the applicable national and local police standards.

The opinion(s) expressed later in this report will be to a reasonable degree of professional certainty. They are based on my background and experience over the past fifty years in the law enforcement area, including my twenty-five year tenure with the Metropolitan Police Department. The opinions are also based on my experience as a police official, a police trainer and a consultant and expert witness in the area of police practices and procedures.

## The Event

At approximately 10:00 p.m. on June 7, 2004, Cotton was in front of her address, at 1723 Capitol Avenue, N.E. where she became embroiled in a verbal argument with a neighbor, a Denise Robinson (hereafter, Robinson). Robinson threatened Cotton with a knife, and Cotton attempted to leave the area. At this time a member of the Metropolitan Police Department, Officer David C. Wallace (hereafter, Wallace) arrived on the scene

Upon Wallace's arrival, Robinson fled the scene. As Wallace approached Cotton, he was informed by her and several witnesses of the threatening actions of Robinson. Wallace, then is alleged to have forcibly taken Cotton to the ground and handcuffed her. Cotton also claims that Wallace detained her, forced her from her home, used inappropriate language towards her and that she received injuries when thrown down and handcuffed by Wallace.

According the Cotton, Wallace disregarded her attempts, and those of others, to inform him of what had transpired. Wallace then took Cotton to an abandoned building in the area, and informed her she had five minutes to leave the area or she would be arrested and her children turned over to Child Protective Services. Wallace then asked if Cotton would follow his directions and when she said she would, he removed the handcuffs and waited at the scene until Cotton got her children and left her home.[1]

On the date of this incident, Wallace prepared a Police Report, for Assault with a Deadly Weapon (ADW) listing Cotton as the victim and Robinson as the wanted suspect.[2]

On the night in question, after Wallace had left the scene, Cotton made a minimum of four calls to the police dispatcher, informing them of the incident and requesting a police official. No police official responded to her calls.[3]

On June 10, 2004, Cotton filed a complaint of harassment, , improper language or conduct and unnecessary or excessive force with the District of Columbia Office of Police

---

[1] Civil Complaint.

[2] MPDC Offense Report by Officer Wallace.

[3] MPDC police Tapes of calls

Complaints. On May 31, 2006- a year later- this complaint was deemed to "lack merit" and was dismissed by that Agency.[4]

### Analysis and Discussion

In reviewing the materials received, it appears the only contemporaneous information available is that contained on the radio tapes, the police ADW report and civilian witnesses statements by Rachel Stinnett, Kesha Cotton (sister of the plaintiff) and Althea Hubbard.

The statements of Stinnett and Hubbard support Cotton's assertion of being thrown to the ground and the one from Kesha Cotton indicates she observed her sister on the ground, handcuffed and crying. Kesha's statement also indicates that her sister was treated rudely by Wallace.

There is a statement of a police official that was on the scene of the incident, given to the Office of Police Complaints, some six months later, in January of 2005. This report by Lieutenant Ida George (hereafter, George) indicates, the Lieutenant- who was a Sergeant at the time- arrived on the scene, observed who she believed was Cotton, and identifies her as the person with a knife. Her statement contains numerous 'I do not recall statements' regarding her observations at the scene. She indicates she 'heard' that Wallace grabbed Cotton and threw her onto a nearby car, but is unsure if this information was from Wallace or someone else. She further stated that as Cotton was belligerent and brandishing a weapon, she believed that Wallace acted to insure his safety. She also claims to have interviewed Cotton, and observed what she described was a small injury to Cotton. She does not recall Cotton claiming that Wallace cursed her. George then states she told Cotton how to file a report and that Cotton did not want to file a complaint at that time.[5]

Lastly, Wallace was interviewed by the Office of Police Complaints on September 16, 2005, approximately a year and three months after the event. In his statement, the officer denies ever touching anyone in the crowd at the scene. He does not recall any use of force, he does not recall arresting anyone, he does not recall Cotton, but does recall her asking him to make a report. He states he made a preliminary investigation, but did not recall what that consisted of. Further, he denies telling Cotton to "Shut the fuck up" or making any threat to take her children from her.[6]

It is interesting to note that the investigator (Alpha Griffin) taking this report from Wallace indicated in his(her) report that Wallace did not appear to be credible witness and

---

[4] Office of Police Complaints Investigative Report and Dismissal Finding, May 31, 2005

[5] January 2005 Statement by Lieutenant George

[6] September 2005 Statement by Wallace

frequently looked to his FOP representative for guidance in answering questions.[7]

Therefore, from the information available, and considering Wallace's lack of knowledge regarding his interaction with Cotton, other than her request to make a report, a preponderance of the evidence available indicates that Wallace did interact with Cotton, did use some level of force towards her that resulted in injuries and that Wallace held Cotton in custody, in handcuffs, for some period of time, but did not charge her with any law violation.

In reviewing the actions of Wallace toward Cotton, the Constitution of the United States, under the Fourth Amendment, requires arrest be made only for probable cause. In rulings by the United States Supreme Court over the years, the interaction between police and citizens have fallen into three categories. First is consensual encounters- also called contacts- where the person is free to interact, or not, with the officer and requires no justification by the police officer. Second is investigative detentions- also called Terry Stops- wherein the officer has a reasonable suspicion that criminal activity is or is about, to occur. Thirdly, is an arrest which must be based on probable cause.[8]

When viewing Wallace's alleged use of force to take Cotton down to the ground, her handcuffing and detention until she agreed to leave the scene with her children, it appears that an arrest occurred. However, if she and her witnesses are to be believed, there was no probable cause to justify an arrest. When reviewing Wallace's version of events, he denies any contact with Cotton, or any arrest, or even any reasonable suspicion for a detention. His version is contrary not only to Cotton and the civilian witness but also to that of a police official, George, who states she was told, either by Wallace or someone else, that Wallace had thrown Cotton against a car. However, it appears that George made no investigation into the propriety of this action as no use of force reports, as required by the D.C. Police Department were filed.

Cotton's other claims, regarding improper language, the threat to take her children away from her, and a failure to seek medical assistance for her will depend upon the weight given to her, her witnesses, and the officer's testimony.

### Opinions

The following opinions are offered to a reasonable degree of professional certainty. I reserve the right to alter, amend, or expand on these opinions, should further information be made available for my review.

It is my opinion that the custodial custody of Cotton was an arrest. As such it lacked the

---

[7]Investigator Griffihn's Memorandum of Interview of Wallace

[8] See for example, "Legal Guide for Police, Constitutional Issues" by John C. Klotter, Fifth Ed. 1999.

requisite probable cause. Therefore the arrest was contrary to national and local police standards.[9] No reasonable officer could believe this action to be proper.

It is my opinion, that the custodial custody of Cotton by Wallace, was not even a investigative detention as there is no evidence that Wallace had a reasonable suspicion to use force against Cotton or to handcuff her. Therefore this would be contrary to national and local police standards. No reasonable officer could believe this action to be proper.

It is my opinion that the use of force against Cotton by Wallace was unnecessary and excessive, as he claims he arrested no one, nor does he claim to have been involved in an investigative detention. Therefore any use of force, would be contrary to national and local police standards for such activity. No reasonable police officer could believe this to be proper.

It is my opinion that if ,Wallace cursed at Cotton and threatened to take her children from her if she did not leave the area, these actions would be contrary to national and local police standards. No reasonable police officer could believe this to be proper.

Submitted by:

Robert W. Klotz
Consultant

Attachments: As noted in the body of this report.

---

[9] The Constitution of the United States, Supreme Court Decisions as to Use of Force, The Standards for Accreditation of Law Enforcement Officers, the Law of the District of Columbia, particularly the D.C. Municipal Regulations, sections dealing with police and the Metropolitan Police General Orders.