UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          :
LATASHA M. COTTON,                        :
                                          :
        Plaintiff,                        :
                                          :
                                          :    C.A. No. 1:05CV011047 (RMU)
        v.                                :
                                          :
DISTRICT OF COLUMBIA, *et al.,*           :
                                          :
        Defendants                        :
                                          :
_____:

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

Defendants District of Columbia and Officer David Wallace, by and through counsel,

respectfully move this Court, pursuant to Fed. R. Civ. Pro. 56 (c), to enter judgment in their

favor.  In support of this motion the Defendants state as follows:

1.    Officer Wallace is entitled to qualified immunity and, therefore, Counts I and II should be
      dismissed.

2.    Count III should be dismissed because Plaintiff was not arrested and imprisoned.

3.    Count IV should be dismissed because the force used by Officer Wallace was not
      excessive.

4.    Plaintiff's claim for negligent infliction of emotional distress (Count V) and negligence
      (Count IX) should be dismissed because Plaintiff alleges conduct that can only be
      characterized as an intentional tort.

5.    Plaintiff cannot make out a viable claim for intentional infliction of emotional distress
      and therefore, Count VI should be dismissed.

6.    Plaintiff's expert has not rendered an opinion to establish that the District Columbia
      negligently supervised Officer Wallace and, therefore, Count VII should be dismissed.

7.   To the extent that Plaintiff brings a constitutional claim against the District of Columbia pursuant to 42 U.S.C. § 1983, that claim must be dismissed because plaintiff cannot show that the alleged deprivation of her constitutional rights was caused by policy, custom or practice of the District of Columbia.

8.   To the extent that Plaintiff alleges a violation of her rights pursuant to 42. U.S.C. §1981, Count II should be dismissed because Plaintiff cannot show intentional discrimination.

9.   To the extent that Plaintiff alleges a violation of her rights pursuant to 42. U.S.C. § 1985, Count II should be dismissed because Plaintiff has not alleged facts to support a conspiracy and "intracorporation immunity doctrine" would barred such a claim.

10.  Since Plaintiff cannot maintain a viable claim under §1985, Plaintiff's claim pursuant to 42 U.S.C §1986 must fail.

11.  Plaintiff's claim for equitable relief (Count VIII) should be dismissed because this Court cannot order the District to terminate the employment of Officer Wallace.

Respectfully submitted,

LINDA SINGER
Attorney General

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

/s/Nicole L. Lynch/s/
NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II

/s/David A. Jackson/s/
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| _____ : | |
| LATASHA M. COTTON, : | |
| : | |
| Plaintiff, : | |
| : | |
| : | C.A. No. 1:05CV011047 (RMU) |
| v. : | |
| : | |
| DISTRICT OF COLUMBIA, *et al.,* : | |
| : | |
| Defendants : | |
| : | |
| _____: | |

**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT**

**PRELIMINARY STATEMENT**

This case arises out of an encounter on June 7, 2004 between Plaintiff Latasha Cotton (hereinafter "Ms. Cotton") and Metropolitan Police Department Police Officer David Wallace (hereinafter "Officer Wallace). Plaintiff has brought a nine (9) count complaint alleging a violation of her constitutional rights under the Fourth and Fourteenth Amendments to the United States Constitution (Count I), a violation of her rights pursuant to 42, U.S.C §§ 1981, 1985 and 1986 (Count II), false arrest and imprisonment (Count III), assault and battery (Count IV), negligent and intention infliction of emotional distress (Counts V and VI, respectively), negligent supervision (Count VII), equitable relief (Count VIII), and general negligence (Count IX).

Plaintiff alleges that the District of Columbia, as Officer Wallace's employer, and Officer Wallace are liable as a result of the events that occurred on June 7, 2004.

## STATEMENT OF FACTS

On June 7, 2004, at approximately 10:00 P.M., Plaintiff was sitting on the steps outside of her apartment, located at 1732 Capital Avenue, N.E. Washington.  Compl. ¶6.  Plaintiff was holding her one-year old baby in her arms while her other two children, approximately three and five years of age,  played in the grass area in front of the apartment building.  Pl's Depo. at 12, 13, 20-22.

According to Plaintiff, her neighbor, Denise Robertson, "involved [Plaintiff] in a verbal altercation" and began to yell and scream at Plaintiff.  Compl. ¶6; Pl's Depo. at 17-18.  Plaintiff claims that she ignored Ms. Robinson during the argument. Pl's Depo at 24.  According to Plaintiff she then gave her children to another neighbor who took the children inside the apartment. *Id.*  Pl's Depo at 25, 26-29, 33.  Plaintiff could not remember what Ms. Robinson was saying, nor could she recall if she challenged Ms. Robertson to a fight. Pl's Depo at 24 and 34.  Plaintiff claims that Ms. Robertson walked closer to her and pulled out a knife and threatened her with it.  Pl's Depo. at 25.   Plaintiff claims that she then "ran away out of fear for her life and safety" and Ms. Robinson chased after her. Compl. at 6; Pl's Depo at 34, respectively.

According to Plaintiff, when she reached the corner she stopped and looked back and saw Ms. Robinson's boyfriend trying to calm Ms. Robinson down. Pl's Depo at 35.   Plaintiff then started to walk back towards her apartment and Ms. Robinson again approached Plaintiff with the knife. Pl's Depo at 35-36.  This time Plaintiff just stood there as Ms. Robinson moved the knife back and forth in Plaintiff's face. Pl's Depo at 36

Meantime, Officer Wallace was on routine patrol and pulled into Capital Avenue. Wallace Depo. at 58, 67.   He observed a crowd of 40-50 people in the street fighting, screaming

and yelling. Wallace Depo. at 58-60.  All of the people were Black. Wallace Depo. at 60.

Plaintiff herself testified that there was a crowd in the street when Officer Wallace pulled up but

Plaintiff did not recall how large the crowd was. Pl's Depo at 40-43.  Officer Wallace tried to

call for back up but had no response from the dispatcher. Wallace Depo. at 63.  The crowd

surrounded Officer Wallace's patrol car and, being the only police officer on the scene, he feared

for his safety.   Wallace Depo. at 64.  Officer Wallace was able to get out of his patrol car and

ordered the crowd to disperse and most of the crowd did disperse.  Wallace Depo. at 61-62.

According to Plaintiff, when she saw Officer Wallace she walked over to him. Pl's Ans.

to Int. No. 7.  People in the crowd yelled that "she" has a knife. Plaintiff's Depo. at 43.  Plaintiff

claims that Officer Wallace then "clipped" her legs and pushed her down. Pl's Depo at 44, 54.

Plaintiff claims that when she hit the ground she scraped her knee which was bleeding. Pl's Depo

at 55.  Plaintiff also claims that she fell on one breast which subsequently became swollen and

the swelling lasted a couple of days.  Pl's Depo at 105.  Plaintiff saw her doctor once and was

prescribed Motrin. Pl's Depo at 105-107.

According to Plaintiff, Officer Wallace did not strike her with such force that caused her

to fall to the ground. Pl's Depo. at 53.  Plaintiff also testified that Officer Wallace did not strike

her with his ASP baton and did not use his knee, shoulder or pull or push her head to force her to

the ground. Pl's Depo at 53.  Officer Wallace did not pull his service weapon.  Wallace Depo. at

66.

Plaintiff claims that she wanted to get up but the crowd told her to stay down. Pl's Depo

at 58.  According to Plaintiff, Officer Wallace then picked her up and placed her in handcuffs.

Pl's Depo at 58.  Officer Wallace walked Plaintiff to the porch next door and told her to sit down

on the step, which Plaintiff did.  Pl's Depo at 77.  Officer Wallace did not force her to the step.

Pl's Depo at 77.  According to Plaintiff, her children were looking out the window and crying. Pl's Depo at 72-73.  According to Plaintiff, Officer Wallace told her that she was going to be arrested and her children would be reported to child protective services.  Pl's Depo. at 72.

Officer Wallace did not arrest Plaintiff and did not report Plaintiff to child protective services. Pl's Depo. at 86; Wallace Depo. at 99, respectively.  When Plaintiff's sister arrived at the scene, Officer Wallace took the handcuffs off Plaintiff and allowed her to leave with her sister. Pl's Depo. at 86-87.

Officer Wallace was able to get a description of Ms. Roberson and canvassed the area to look for her. Wallace Depo. at 74-75.  Officer Wallace was not able to locate Ms. Robertson but he gave Plaintiff a copy of the police report and forwards the report on to one of the detectives. Wallace Depo. at 79-80.  The next day, Ms. Robertson was arrested.  Pl's Depo. at 111-113.

## STANDARD OF REVIEW

Under Fed. R. Civ. P. 56, a motion for summary judgment shall be granted if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits show that there is no genuine issue of material fact, and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, (1986).  In considering a motion for summary judgment, the "evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Id. at 255.

The non-moving party's opposition, however, must consist of more than mere unsupported allegations or denials and must be supported by affidavits or other competent evidence setting forth specific facts showing that there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324, (1986). The non-moving party must provide evidence that would permit a reasonable jury to find in the non-moving party's favor.

*Laningham v. United States Navy*, 259 U.S. 317, 324 (1987). If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Liberty Lobby*, 477 U.S. at 249-50.

## ARGUMENT

I.     **Officer Wallace is entitled to qualified immunity and therefore, Counts I and II should be dismissed.**

Office Wallace did not violated a clearly established constitutional right and his actions were objectively reasonable and, therefore, he is entitled to qualified immunity.

Under certain circumstances, government officials enjoy qualified immunity from constitutional and statutory claims against them. *Saucier v. Katz*, 533 U.S. 194, 200 (2001); *Lederman v. United States*, 291 F.3d 36 (D.C. Cir. 2002). Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation" *Saucier v. Katz*, 533 U.S. at 200. Thus, qualified immunity is an immunity from suit and not merely a defense; it shields government officials performing discretionary functions from liability for actions brought under 42 U.S.C. 1983, provided that their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

The Supreme Court has recognized that qualified immunity protects from suit "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341, (1986). Police officers, specifically, should not have to refrain from performing their duties to the best of their abilities for concerns of civil liability, unless they are violating a clearly established right. *District of Columbia v. Evans*, 644 A.2d 1008, 1016 (D.C. 1994). The issue of whether an officer is entitled to qualified immunity is a question of law to be determined by the trial court. *District of Columbia v. Jackson,* 810 A.2d 388, 393-94 (D.C. 2002).

Qualified immunity dismissals are especially appropriate early in the proceedings of a case.  As noted by the Supreme Court:

> Where the defendant seeks qualified immunity, a ruling on that issue should be made early in the proceedings so that the costs and expenses of trial are avoided where the defense is dispositive.  Qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." …

*Saucier*, 533 U.S. at 200 (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

The Supreme Court has consistently "stressed the importance of resolving immunity questions at the earliest possible stage in litigation."  *Saucier*, 533 U.S. at 201 (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (*per curiam*) (internal quotations marks omitted).  In fact, qualified immunity is an affirmative defense of such great importance that it is appealable immediately after summary judgment proceedings.  *See Mitchell v. Forsyth*, 472 U.S. 511 (1985).

To determine if a government officer is entitled to qualified immunity, a two-fold inquiry is required. *Brosseau v. Haugen*, 543 U.S. 194 (2004).  The threshold inquiry is whether plaintiff's allegations, if true, show that an officer's conduct violated a constitutional or statutory right.  *Id.*  If the conduct did violate a right, then a court should decide whether the right had been clearly established at the time of the alleged violation.  *Id.*; *Int'l Action Ctr. v. United States*, 365 F.3d 20, 24 (D.C. Cir. 2004).  Liability attaches to the official if he violated a right whose contours were sufficiently clear that a reasonable official would understand that what she was doing violated that right.  *United States v. Lanier*, 520 U.S. 259, 270 (1997).

In *Brosseau, supra,* a case in which qualified immunity was granted to a police officer who shot a fleeing suspect in the back, the Supreme Court explained, "'the right the official is alleged to have violated must have been 'clearly established' in a more particularized, and hence more relevant sense: The contours of the right must be sufficiently clear that a reasonable official

would understand that what he is doing violates that right.'"  *Id.* at 198-99 (quoting *Anderson v.*

*Creighton*, 483 U.S. 635, 640 (1987)).

Thus, the inquiry of whether a right was clearly established at the time of the purported

violation "must be undertaken in light of the specific context of the case, and not as a broad,

general proposition." *Saucier*, 533 U.S. at 201.  In order to determine what is required for a

particular right to be "clearly established" in the context of qualified immunity, the Court in

*Hope v. Pelzer*, 536 U.S. 730, 739 (2002), stated that:

> [f]or a constitutional right to be clearly established, its
> contours "must be sufficiently clear that a reasonable official
> would understand that what he is doing violates that right.  This is
> not to say that an official action is protected by qualified immunity
> unless the very action in question has previously been held
> unlawful, *see Mitchell [v. Forsyth,* 472 U.S. 511, 535 n.12], but it
> is to say that in the light of pre-existing law the unlawfulness must
> be apparent.

"The salient question" for a court [ ] is "whether the state of the law [at the time of the state

action] gave respondents fair warning that their alleged treatment of [the plaintiff] was

unconstitutional." *Id.*

According to the United States Supreme Court, facts must be evaluated from the

perspective of a reasonable officer on the scene, and the use of hindsight must be avoided in

order to determine the reasonableness of a police officer's conduct.  *Graham v. Connor*, 490 U.S.

386, 396 (1989).

The Fourth Amendment to the United States Constitution affords people the right "to

be secure in their persons … against unreasonable searches and seizures … but upon probable

cause …" United States Const. amend. IV. Thus, when a person's arrest is based on probable

cause the Fourth Amendment's guarantees against unreasonable seizure is not violated.

The Supreme Court has long recognized an exception to the Fourth Amendment probable

cause requirement.  In *Terry v. Ohio*, the Supreme Court, held that when a police officer may

briefly detain a citizen if he has a reasonable, articulable suspicion that criminal activity may be

afoot.  392 U.S. 1 (1968).  This reasonable suspicion standard is less demanding than probable

cause.  In any particular case, the question of whether reasonable suspicion existed can only be

answered by considering the totality of the circumstances as the officer on the scene experienced

them.  *United States v. Moore*, 364 U.S. App. D.C. 281; 394 F.3d 925; 2005 (2005).

Since *Terry*, courts have applied reasonable articulable suspicion standard in other cases.

*United States of America v. Askew*, 482 F.3d 532 (D.C. Cir. 2007) (When  police have reasonable

belief that a crime , is committed, or is about to be committed, the officers may forcibly stop that

person); *United States of America v. Hutchinson*, 408 F.3d 796 (D.C. Cir. 2005) (If a police

officer has reasonable articulable suspicion that a crime has been committed a police officer may

detain a person to verify the person's identification); *Maryland v. Buie*, 494 U.S. 325, 337 (The

Fourth Amendment permits a properly limited protective sweep in conjunction with an in-house

arrest when the searching officer possess a reasonable belief based on specific and articulable

facts that the area to be swept harbors an individual posing a danger to those on the arrest scene).

Additionally, when a police officer fears for his safety, the use of handcuffs does not

exceed the bounds of an investigatory stop, nor does it transform the stop to a formal arrest.  *U.S.

v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007).  The Courts have routinely held the use of

handcuffs in the investigatory stop context to be reasonable in situations where suspects

attempted to resist police, made furtive gestures, ignored police commands, attempted to flee, or

otherwise frustrated police inquiry.  *Womak v. United States*, 673 A.2d 603, 609 (D.C. 1996).

Applying these principles to the instant case, it is clear that case Officer Wallace did not

violate a clearly established constitutional right.  Here, Officer Wallace briefly detained Plaintiff

so that he could investigation what crimes if any had been committed.  Officer Wallace had

reasonable articulable suspicion that a crime had been or was about to be committed.  When

Officer Wallace drove on to Capital Avenue, NE, he observed a large crowd fighting in the

street. Wallace Depo. at 58-60, 67.  Plaintiff herself admits that there was a crowd in the street

when Officer Wallace pulled up.  Pl's Depo. at 40-43.   The crowd surrounded Officer Wallace's

police car and he feared for his safety.  Wallace Depo. at 64.   Once Officer Wallace got out of

his police car, Plaintiff approached him and people in the crowd shouted she has a knife. Pl's

Ans. To Int No. 7 and Pl's Depo. at 43.  On these facts Officer Wallace's detention of Plaintiff

did not violate the Fourth Amendment and, therefore, Plaintiff cannot show that the conduct of

Officer Wallace violated a clearly established right.  As the Supreme Court stated in *Los Angeles

County, California, et al. v. Rettele, et al.*, when constitutional rights were not violated, there is

no necessity for further inquiries concerning qualified immunity."  2007 U.S. LEXIS (quoting

Saucier v. Katz, 533 U.S. 194, 201 (2001)) (Internal quotations omitted).

 Even if Plaintiff could establish constitutional right that was clearly establish, Officer

Wallace would still be entitled to qualified immunity under the second prong of the analysis.

This inquiry concerns whether a reasonable police Officer facing the same situation would know

that their conduct violated a clearly establish constitutional right.  The facts must be evaluated

from the perspective of a reasonable officer on the scene, and the use of hindsight must be

avoided in order to determine the reasonableness of a police officer's conduct.  *Graham, supra,*

490 U.S. at 396.

 Here, Officer Wallace was alone and on routine patrol when he pulled onto Capital

Avenue, where he observed a large crowd fighting.  Wallace Depo. at 40-43.   Officer Wallace

called for back up but got no response from the dispatcher.  Wallace Depo. at 63.  The crowd

surrounded Officer Wallace's car but he was able to get out of his police car.   Wallace Depo. at

64.  Officer Wallace feared for his safety.  Wallace Depo. at 64.  Once Officer Wallace got out of

his police car he ordered the crowd to disperse and a number of them did. Wallace Depo. at 61-

62.   Plaintiff then walked towards Officer Wallace and people shouted she has a knife.  Pl's

Ans. to Int. No. 7; Pl's Depo. at 42-43.   Looking at these facts from the perspective of Officer

Wallace no reasonable police officer would facing the same situation would reasonably believe

that if they "clipped" Plaintiff legs causing her to fall to the ground a constitutional right has

been violated.

Thus, even if Plaintiff could show a clearly established constitutional right, Officer

Wallace would still be entitled to qualified immunity.

## II.     Count III should be dismissed because Plaintiff cannot establish that she was not arrested and imprisoned.

Plaintiff's claim for false arrest should be dismissed because Plaintiff was only detained

and not arrested.  In this case, Officer Wallace handcuffed Plaintiff for his own protection and

the protection of others.  Wallace Depo. at 64.  When Plaintiff approached Officer Wallace,

people in the crowd stated she has a knife.  Pl's Ans. to Int. No. 7; Pl's Depo. at 43.  There is no

evidence that Officer Wallace knew that the crowd was referring to someone other than Plaintiff.

Plaintiff was handcuffed for approximately twenty minutes and once Plaintiff's sister arrived on

the scene Plaintiff was allowed to leave with her sister.  Pl's Depo. at 86-87.  As pointed out

above, when a police officer fears for his safety, the use of handcuffs does not exceed the bounds

of an investigatory stop, nor does it transform the stop to a formal arrest.  *U.S. v. Atchley*, 474

F.3d 840, 849 (6th Cir. 2007).

When police have reasonable belief that a crime , is committed, or is about to be

committed, the officers may forcibly stop that person. A*skew*,  *supra*, 482 F.3d 532 (D.C. Cir.

2007)).   The Courts have routinely held the use of handcuffs in the investigatory stop context to be reasonable in situations where suspects attempted to resist police, made furtive gestures, ignored police commands, attempted to flee, or otherwise frustrated police inquiry.  *Womak v. United States*, 673 A.2d 603, 609 (D.C. 1996).

Since Plaintiff was not arrested her false imprisonment claim must fail .For these reasons Count II should be dismissed.

**III.    Count IV should be dismissed because the force used by Officer Wallace was not excessive.**

A police officer is privileged to use reasonable force in carrying out his official duties. In order for Plaintiff to prevail on her claim for assault and battery Plaintiff must prove that the force used by Officer Wallace was clearly excessive. *Jackson v. District of Columbia,* 462 A.2d 948-955-956 (D.C. App. 1980); *Gabrou v. May Department Stores Co*., 462 A.2d 1102, 1105, n.4 (D.C. App. 1983).

In this case, the force used by Officer Wallace was not clearly excessive.  Plaintiff claims that Officer Wallace "clipped" her legs and pushed her down. Pl's Depo at 44, 54.  According to Plaintiff, Officer Wallace did not strike her with such force that caused her to fall to the ground. Pl's Depo. at 53.  Plaintiff also testified that Officer Wallace did not strike her with his ASP baton and did not use his knee, shoulder or pull or push her head to force her to the ground. Pl's Depo at 53.  Officer Wallace did not pull his service weapon.  Wallace Depo. at 66.

Plaintiff claims that she wanted to get up but the crowd told her to stay down. Pl's Depo at 58.  According to Plaintiff Officer Wallace then picked her up and placed her in handcuffs. Pl's Depo at 58.  Officer Wallace walked Plaintiff to the porch next door and told her to sit down on the step, which Plaintiff did.  Pl's Depo at 77.  Wallace did not force her to the step. Pl's Depo at 77.

On these facts no reasonable jury could find that the force used by Officer Wallace was clearly excessive.  Therefore, Count IV should be dismissed.

**IV.    Plaintiff's claim for negligent infliction of emotional distress (Count V) and negligence (Count IX) should be dismissed because Plaintiff alleges conduct that can only be characterized as an intentional tort.**

In Count V Plaintiff alleges that Officer Wallace was negligent when he "acted with extreme and outrageous conduct when he forcibly arrested plaintiff, falsely imprisoned plaintiff, used excessive force …" Compl. ¶ 49.   In Count IX, Plaintiff alleges that the Defendants breached their duty of care when plaintiff was falsely arrested, imprisoned and her constitutional rights were violated."  Compl. ¶ 78. were negligent "   It is clear that the conduct Plaintiff complains about is intentional in nature rather than negligent conduct.

The DC Court of Appeals as consistently rejected attempts by plaintiffs to couch intentional torts in terms of negligence. Plaintiff's characterization of the conduct as negligent is not controlling and this court is "not bound by plaintiff's characterization of the action as sounding in negligence." *Maddox v. B.A. Bano, et al.*, 422 A. 2d 763, 765 (D.C. App. 1980); Sabir *v. District of Columbia*, 755 A.2d 449, 452, (D.C. 2000) (quoting *United States Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993)

In *Maddox*, the Court upheld a grant of summary judgment where plaintiff failed to allege a negligent cause of action separate from plaintiff's claim for assault and battery.  There, plaintiff's original complaint alleged that police officers acted "willfully, wantonly, and reckless, and in a manner" to accomplish plaintiff's arrest.  *Id*.   Plaintiff also had alleged that the MPD "negligently failed in their duty to train, instruct, supervise and control police officers regarding arrest procedures."  *Id*. The trial court granted summary judgment for the defendants but gave

plaintiff an opportunity to amend the complaint "to clarify only plaintiff's claim that his physical injury was the result of negligence by the arresting officers, as opposed to intentional tort." *Id.* Thereafter, the amended complaint alleged that:

> On or about June 17, 1973, the Defendants Bano and Doe did take into their physical control and custody in the course of an arrest, the plaintiff, a private citizen; it was then and there that the duty of said Defendants and owing to the Plaintiff, that they exercise due care of the person of the plaintiff in the making of said arrest, notwithstanding which the Defendants, in breach of said duty to the Plaintiff, did carelessly and negligently effect said arrest, and as a proximate cause of said carelessness and negligence, the Plaintiff did sustain a fracture of the left arm.

*Id.* at 764.

Upon further consideration of the amended complaint, the trial court found that the amended complaint set forth only conclusory terms and "shed "no light whatsoever" on the claim for negligence. *Id.* The District of Columbia Court of Appeals agreed. The Court found that the amended complaint failed to specify a negligent act and that the "only tortuous conduct clearly pled is assault and battery." *Id*, at 764.

In *District of Columbia v. Tinker*, the plaintiff sued the District of Columbia because of injuries suffered when he was arrested by MPD officers. *District of Columbia v. Tinker*, 691 A.2d 57 (D.C. 1997). Tinker alleged that he was negligently hit and knocked down by the officers and hit with a nightstick. *Tinker*, 691 A.2d at 59. The issue before the Court was whether Tinker's claim was subject to a one-year statute of limitations for assault and battery, or the three-year statute of limitations for negligence. The *Tinker* Court relied squarely on *Maddox* in holding that because "the second count of Tinker's complaint was that the conduct of the arresting police officer… amounted to assault and battery," it must be dismissed. *Id.*

In *Sabir v. District of Columbia*, 755 A.2d 449, 452 (D.C. 2000), plaintiffs alleged several counts of negligence and civil rights violations against individual police officers and the

District of Columbia, arising out of plaintiffs' arrest and seizure, custody and transportation and the amount of force used in the arrest of plaintiffs. On appeal, plaintiffs challenged a directed verdict in favor of the District on plaintiffs' claims of negligent assault and battery and negligent custody and transportation. The Court of Appeals noted that plaintiffs' complaint had alleged that the arresting officers 'negligently caused the assault and battery, arrest and detention of plaintiffs." *Id.* The Court noted that the trial judge entered a directed verdict for the defendants, stating that "[y]ou can't convert an intentional tort to a negligence cause of action." *Id.* The Court then concluded that the plaintiffs had combined two theories of negligence and assault and battery into a single cause of action, "in essence pleading a nonexistent cause of action." *Id.* Further, the Court stated, "[t]here is no such thing as a negligent assault." *Id.*, quoting 1 F. Harper & F. James, The Law of Torts § 3.5 at 3:19 (3d ed. 1996). "In other words, a plaintiff cannot seek to recover by 'dressing up the substance' of one claim, here assault, in the 'garments' of another, here negligence." *Id.*, quoting *United States Nat'l Ins. Co. v. The Tunnel, Inc.*, 988 F.2d 351, 354 (2d Cir. 1993).

In *District of Columbia v. Chinn*, 839 A.2d 701 (D.C. 2003), the Court of Appeals applied these principles to preclude a claim of negligence arising from the use of force by police officers. At trial, Chinn had testified that police officers pulled him out of his car and repeatedly beat him with a blunt object. As the Court found, plaintiff could not present a separate and distinct cause of action for negligence in these circumstances. The Court noted: "Intent and negligence are regarded as mutually exclusive grounds for liability. As the saying goes, there is no such thing as a negligent battery." *Id.* at 706, quoting 1 Dobbs, Law of Torts § 26 at 51 (2001). The force used to seize plaintiff "did not transmogrify into negligence by the fact that officers may have in the process mistakenly crossed the line of permissible force." *Id.* at 711.

Any negligence would be "inherent in the battery itself." *Id*. Therefore, the Court held that plaintiff could only maintain a cause of action for the intentional tort of assault and battery, not for negligence.

The *Maddox, Tinker, Sabir* and *Chinn* cases all stand for the proposition that a complaint alleging facts establishing a cause of action for assault and battery cannot suffice as a claim for negligence. In this case, plaintiff is attempting to combine negligence with the intentional torts. This, the plaintiff cannot do in this jurisdiction. Plaintiff does not allege and there is no record evidence of any conduct on part of Officer Wallace that can be characterized as negligent. For these reasons, Counts VI and IX should be dismissed.

**V.      Plaintiff cannot make out a viable claim for intentional infliction of emotional distress and therefore, Count VI should be dismissed.**

In this jurisdiction, in order to establish a claim for intentional infliction of emotional distress Plaintiff must show that the Officer Wallace (1) engaged in extreme and outrageous conduct that (2) intentionally or recklessly (3) caused her severe emotional distress. *Gregg v. Hay-Adams Hotel*, 942 F. Supp. 1, 10 (D.D.C. 1996), citing *King v. Kidd*, 640 A.2d 656, 667-68 (D.C. 1993); *see also Bernstein v. Fernandez*, 649 A.2d 1064, 1075 (D.C. 1991). There is no general duty of care to avoid causing mental distress, and liability is not imposed for all conduct that causes mental distress. *See Duncan v. Children's Nat. Medical Center*, 702 A.2d 207, 211 (D.C. 1997) To establish the required degree of "outrageousness," the plaintiff must show that the allege conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Bernstein*, 649 A.2d at 1075 (quoting Restatement (Second) of Torts § 46 cmt. d (1965)); *see also Hoffman v. Hill and Knowlton, Inc.*, 777 F. Supp. 1003, 1005 (D.D.C. 1991).

This very demanding standard is infrequently met. *Cooke-Seals v. District of Columbia*, 973 F. Supp. 184, 186 (D.D.C. 1997).

In *Smith v, District of Columbia, et al*., 882 A.2d 778 (D.C. App. 2005) (reversed on other grounds), the DC Court of Appeals defined the required degree of outrageousness by stating that "the recitation of the facts to an average member of the community would aroused his [or her] resentment against the actor  to exclaim "Outrageous!"  *Id.* at 793-794 (quoting RESTATEMENT (SECOND) OF TORTS § 46 (1965)).   In *Smith*, plaintiff alleged that a police officer used an illegal choke hold and jerked plaintiff's head so violently that plaintiff suffered permanent injuries from a broken jaw.  Further, the plaintiff alleged that the police officer mocked plaintiff about his broken jaw.  The Court concluded that on these facts the conduct of the officer did not rise to a high degree of outrageousness that would cause an average member of the community to resent the police officer and exclaim Outrageous!"  *Id.*

In this case, Plaintiff alleges Officer Wallace's conduct was extreme and outrageous when he arrested and falsely imprisoned Plaintiff and used excessive force when he caused Plaintiff to fall to the ground by tripping Plaintiff and threatening to have Plaintiff's children taken away if she did not leave her home.  Viewing these facts in a light most favorable to Plaintiff and drawing all reasonable inference in her favor, these facts are insufficient to state a claim for intentional infliction of emotional distress.

## VI.    Plaintiff's expert has not rendered an opinion to establish that the District Columbia negligently supervised Officer Wallace and, therefore, Count VII should be dismissed.

Courts generally required expert testimony regarding the standard of care in cases concerning allegations of negligent police operations, supervision and training.  See *Griggs v. Washington Metropolitan Area Transit Authority, et al*., 2002 U.S. Dist. LEXIS 18413; *District of Columbia v. White*, 442 A.2d 159, 164-165 (D.C. App. 1982) (requiring expert testimony

concerning adequacy of MPD's weapons safety training); *District of Columbia v. Peters*, 527 A.2d 1269 (D.C. App. 1987)(requiring expert testimony for training police regarding confrontations with people under the influence of narcotics); *Holder v. District of Columbia*, 700 A.2d 738, 741-742 (D.C. App. 1997) (stating that police use of force is an issue beyond the kin of the average jury).

In order to provide expert testimony, plaintiff's expert is required to provide a report consistent with the requirement of Federal Rule of Civil Procedure 26. Rule 26(a)(2)(B) provides that the expert's report "*shall* contain a complete statement of *all* opinions to be expressed and the basis and reasons therefore; the data or other information considered … in forming the opinion; any exhibits to be used as a summary of or support for the opinions. …" (Emphasis added).

The language of Rule 26(a)(2)(B) is mandatory. Pursuant to Rule 37 (c) (1), a party who without justification fails to disclose the required information is prohibited from using such testimony at trial. *West, et al. v. Dacey, et al*., 2004 U.S. App. LEXIS 14140 (no abuse of discretion when expert was excluded for failure to comply with Rule 26 (a)).

In this case, Plaintiff's expert report does not set forth a standard of care relative to police training. Moreover, the Plaintiff's expert does not opine that the District breached its duty to the supervision of Officer Wallace and the breach of that duty was the proximate cause of Plaintiff's alleged injuries. Since Plaintiff's expert report fails to meet the requirement of Rule 26 (a) (2) (B) Plaintiff will be unable to establish her claim for negligence claims. Therefore, Count VII should be dismissed, as well as Counts V and IX.

VII.    **To the extent that Plaintiff brings a constitutional claim against the District of Columbia pursuant to 42 U.S.C. § 1983, that claim must be dismissed because plaintiff cannot show that the alleged deprivation of her constitutional rights was caused by policy, custom or practice of the District of Columbia.**

A municipality cannot be held liable under 42 U.S C § 1983 on the theory of respondent superior. *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978); *Triplett v. District of Columbia*, 108 F. 3d 1450, 1453 (D.C. Cir. 1997); *Hunter v. District of Columbia*, 943 F. 2d 69, 74 (D.C. Cir. 1991); *Graham v. Davis*, 880 F. 2d 1414, 1421 (D.C. Cir. 1989). Rather, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under 1983." *Monell* 436 U.S. at 694; *see also Polk County v. Dodson*, 454 U.S. 312, 326 (1981) (municipality's official policy must be the moving force of constitutional violation' in order to establish Section 1983 liability) (quoting *Monell* 436 U.S. at 694).

Thus, in order to state a claim against the District, plaintiff must allege that the deprivation of her constitutional rights was caused by a policy, custom or practice of the District. As explained in *Monell,* the District can be held liable for the plaintiff's constitutional claims only if the plaintiff alleges facts that indicate her injury was caused by a policy or custom of the District. 436 U.S. 658, 694 (1978); *see also City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985). According to the Supreme Court decision in *Monell*:

> a local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom … inflicts the injury that the government as an entity is responsible under § 1983.

436 U.S. at 694.

The Supreme Court further held in *Oklahoma City* that, "at the very least there must be an affirmative link between the policy and the particular constitutional violation alleged." *Oklahoma City*, 471 U.S. at 824. The *Oklahoma City* decision interpreted *Monell* as holding that "municipal liability should not be imposed when the municipality was not itself at fault." *Id.* at 818. To establish a pattern, policy or custom, a plaintiff must present "concentrated, fully packed, precisely delineated scenarios of unconstitutional conduct." *Parker v. District of Columbia*, 850 F.2d 708, 712 (D.C. Cir. 1988) (quoting *Carter v. District of Columbia*, 795 F.2d 116, 125 (D.C. Cir 1986))

Since the seminal *Monell* ruling, the courts have developed four different types of proof that can establish such municipal liability. First, a plaintiff can satisfy the *Monell* requirements by setting forth direct evidence that the municipality adopted an unconstitutional policy. This can be done by pointing to a formally adopted policy—such as a statute or regulation—that violates the constitutional rights of the individual. *Monell*, 436 U.S. at 694. In this case, plaintiff cannot point to any law, regulation or policy of the District relating to the arrests that can fairly be said to be unconstitutional.

Second, direct evidence of a municipal policy can be proven by an unconstitutional decision or action taken by an official policymaker of the municipality. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480-81 (1986). Plaintiff cannot prove that a District policymaker adopted an unconstitutional policy relating to arrest. To begin, a policymaker is determined not by federal law fact but rather by state law. *City of St. Louis v. Praprotnik*, 485, U.S. 112, 118-119 (1988). "Authority to make municipal policy may be granted directly by a legislative enactment or may be delegate by an official who possess such authority …" Id. (quoting

*Pembaur, supra*).  Supervisors are not policymakers for the purpose of establishing liability against a municipality.

In *Triplett v. District of Columbia,* 108 F.3d 1450, 1454 (D.C. Cir 1997), an inmate plaintiff sued two correctional officers and the District of Columbia for the officers' use of excessive force.  The court held that the plaintiff could succeed on his § 1983 claims against the District only if he could "show fault on the part of the city based on a course its policymakers consciously chose to pursue."  *Id.* (*citing Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)).

In *Pembaur*, the Supreme Court further explained the limitations of using the "policymaker" approach to satisfy the rigid *Monell* standard.  475 U.S. at 481.  There, the Court first explained that:

> The conclusion that tortious conduct, to be the basis for municipal liability under § 1983, must be pursuant to a municipality's "official policy" is contained in this discussion. The "official policy" requirement was intended to distinguish acts of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.

*Id.* at 479.  The Court then held that, under this standard, "Municipal liability attaches only where the decision maker possesses *final authority* to establish municipal policy *with respect to the action ordered*."  *Id.* at 481 (emphasis added).

Under this standard, to be a "policymaker" for purposes of municipal liability, it is not enough for a particular official to have "discretion in the exercise of particular functions."  *Id.* at 482.  Instead, the Court wrote, "[t]he official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable."  *Id.* at 482-83 (emphasis added); *see also Morgan v. Barry*, 785 F. Supp. 187, 194 (D.D.C. 1992) ("the

authority to make policy that will give rise to municipal liability is final policy…. The District of

Columbia can be held responsible under § 1983 for the eviction of the plaintiff if it was the

product of a sanctioned policy ordered or allowed to exist by a municipal official with final

policymaking authority in that area.").

In the District, the Mayor and the Chief of Police are policymakers for the MPD.  The

Mayor's authority over the MPD is established by DC Code § 5-101.03 (2001 edition), which

provides:

> It shall be the duty of the Mayor of the District of Columbia at all times
> of the day and night within the boundaries of Police District:
>
> (3)  To protect the rights of persons and property …

The Chief of Police's policymaking authority is found in District of Columbia Municipal

Regulations.  Title 6A, § 800.3 provides:

> The Chief of Police shall promulgate all orders, rules and regulations of the
> Mayor or Council which pertain to the work of the Metropolitan Police
> Department, and shall issue those instructions, and promulgate those orders,
> rules, and regulations, not inconsistent with the law or with the overall D.C.
> Government policy, as he or she may deem proper in the exercise of his or her
> functions as chief executive of the department.

In this case, plaintiff has not alleged any unconstitutional conduct on part of either the

Mayor or the Chief of Police.  Without such allegations and proof, the District cannot be held

liable for alleged constitutional violations committed by one of its employees. See Complaint,

generally).

Third, if there is no direct evidence of an unconstitutional municipal policy, plaintiff still

can establish municipal liability if she can provide sufficient circumstantial evidence that the

District had informally adopted an unconstitutional policy.   This generally can be shown by

specific statistical evidence, or by setting forth a series of similar incidents that were known to

municipal policymakers, but not addressed or resolved by those officials. *Carter v. District of*

*Columbia*, 795 F.2d 116, 124-126 (D.C. Cir. 1986).  This is a much more difficult burden to prove.

In *Carter*, plaintiff introduced statistical evidence which showed that over a five year period police officers were exonerated in 92% of the misconduct investigation, of the 26 officers who were found to have used unjustifiable force adverse action was taken against only one of them and the others received only a reprimand, of the 21 cases in which the Civilian Complaint Review Board recommended adverse action against police officers, only five officers received adverse actions. *Id*. at 123-124.

Further, plaintiffs sought to establish liability under §1983 by placing into evidence incidents of prior alleged police misconduct. The evidence consisted of testimony of a witness that police had beat him, the death of a prisoner while in police custody, the death of seven people over a two-month period, a fine imposed on a police officer for striking a person without cause, the reprimand of police officer who looped a belt around the neck of a prisoner and the admission by the police chief that a officer had kicked a handcuffed suspect. *Id*. at 123-124

In the face of this evidence, the Court of Appeals concluded that even this evidence was insufficient to prove a custom or policy of constitutional violations.  *Id*.  The Court stated that the "testimony of actual occurrences was scattered and the occurrences did not coalesce into a discernable policy and that the plaintiff's statistics were too general to prove any pattern or policy." *Id*.  The Court specifically stated "if the evidence plaintiffs presented here were adequate to make out a §1983 case, then practically every large metropolitan police force, it would seem, could be targeted for such liability." *Id*

In this case, there is no record evidence obtained during discovery that even comes close to the evidence relied on by the plaintiff's in *Carter* and rejected by the Court of Appeals and,

therefore, she will be unable to establish an unconstitutional policy or practice by statistical

evidence.  Additionally, Plaintiff's expert has not opined that a custom, policy or practice of the

District was the moving force behind Plaintiff's alleged constitutional violation.   Plaintiff fails

to identify any policy of the District of Columbia or action by a municipal decision-maker that

violated her rights.  Moreover, the plaintiff's complaint also states no facts that would support an

inference of "deliberate indifference" by a District policymaker.  Without a factually supported

allegation that the constitutional violations were conducted by a District policymaker, the

plaintiff's § 1983 claim against the District must be dismissed.

Finally, a plaintiff might be able to prove municipal liability by showing that the

municipality failed to adequately train its employees.  To satisfy such a standard, a plaintiff must

provide evidence that officials knew or should have known of a specific training need, that

failure to address that need was likely to result in violation of individual constitutional rights, and

that the officials were deliberately indifferent to the need for such training. *City of Canton, Ohio*

*v. Harris*, 489 U.S. 378, 388 (1989).

Furthermore, once a plaintiff has proven—by any of the above methods—that a

municipality has adopted a policy or custom of violating constitutional rights, the plaintiff still

must prove that the policy or custom caused the constitutional injury in question. *Oklahoma City*,

471 U.S. at 823.  The plaintiff must prove that the policy was the "moving force" behind the

alleged constitutional violation.  *Id.*

Here, since plaintiff cannot establish a formal or informal unconstitutional policy or

custom of the District and cannot establish deliberate indifference on the part of a District

policymaker, plaintiff will be unable to show that a policy of the District was the "moving force"

that caused her injury.   For these reasons, Count I should be dismissed as to the District of

Columbia.

**VIII.  To the extent that Plaintiff alleges a violation of her rights pursuant to 42. U.S.C. §1981, Count II should be dismissed because Plaintiff cannot show intentional discrimination.**

In order to prevail on a claim under 42 U.S.C. § 1981 Plaintiff must establish that Officer

Wallace's conduct was "motivated by purposeful discrimination." *Fletcher v. District of*

*Columbia*, 2005 U.S. Dist. LEXIS 5013 (D.D.C. March 22, 2005) (Urbina, J.) (quoting *General*

*Bldg. Contractors Ass'n, Inc. v. Pennsylavinia*, 458 U.S. 375, 391 (1982).  To show purposeful

discrimination plaintiff must establish that she was "treated differently than others who were

similarly situation because of her race."   *Id.* (quoting *Berger v. Iron Workers Reinforced*

*Rodmen Local 201,* 843 F.2d 1395, 1413 (D.C. Cir. 1988).

In *Fletcher*, this Court dismissed plaintiff's §1981 claim for excessive force against a

police officer where the claim was based solely on plaintiff's claim that a police officer allegedly

use the "N" word when questioning plaintiff about as shooting after plaintiff left the scene of a

robbery that plaintiff committed. *Id.*   This Court concluded that based on those facts no

reasonable jury could find that the shooting was because of plaintiff's race. *Id.*

In this case, Plaintiff has only alleged that she is a Black female and Office Wallace is a

White male.  Compl. ¶¶ 28 and 29.  Officer Wallace's uncontroverted deposition testimony was

that at the time of the incident all of the individual he saw on Capital Avenue were Black.

Wallace Depo. at 60.   Nowhere in the complaint does Plaintiff allege that she was treated

differently that other individuals who are not a member of her protected class.

Moreover, Plaintiff does not allege that Officer Wallace said anything from which a

reasonable jury could find that Officer Wallace's actions towards Plaintiff was motivated by

race.  In fact, Plaintiff testified that when Officer Wallace approached her he said nothing to her. Pl's. Depo. at

The bases for Plaintiff's §1981 claim in this case is even weaker than the facts in *Fletcher*. Since Plaintiff cannot establish intentional discrimination on the part of Officer Wallace, her §1981 claim as alleged in Count I should be dismissed.

**IX.    To the extent that Plaintiff alleges a violation of her rights pursuant to 42. U.S.C. § 1985, Count II should be dismissed because Plaintiff has not alleged facts to support a conspiracy and "intracorporation immunity doctrine" would barred such a claim.**

42 U.S.C § 1985 "provides a right of action where a conspiracy to interfere with a constitutionally or federally protected right is motivated by racial or otherwise class-based invidiously discriminatory animus."  *Mazloum v. District of Columbia, et al*., 442 F. Supp. 2d 1, 18.   § 1985(3) is violated whenever two or more persons conspire "to deprive [a person] of the equal protection of the laws or of equal privileges and immunities under the laws." *Id*. (citations omitted).

In order to state a claim under §1985, Plaintiff must allege sufficient facts from which a conspiracy can be inferred.  *Clark v. State of Maryland Department of Public Safety and Correctional Services*, 247 F. Supp. 2d 773 (D.Md 2003); McCormick *v. City of Lawrence*, 253 F. Supp. 2d 1172 (D.Kan. 2003).   Conclusory allegations of a conspiracy do not state a claim under §1985.  *Graves v. United Sates of America, et al.,* 961 F. Supp. 314 (D.D.C 1997), reconsideration denied 967 F. Supp. 572, appeal dismissed 1998 U.S. App. LEXIS 7925.

In this case, Plaintiff has failed to allege any facts from which a conspiracy could be inferred.  Compl. ¶¶ 6-23.   Additionally, Plaintiff's bare allegations that Defendants District and Ramsey acted in a concerted effort … with the intent to deprive plaintiff of the equal protection of the law" are conclusory and are insufficient to state a claim under §1985. Therefore, since

Plaintiff has failed to allegation a cause of action under §1985, this claim should be dismissed.

Even if the facts as alleged in the complaint were sufficient to state a §1985 cause of action, this claim should still be dismissed under the intracorporation immunity doctrine.  A civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means.  *Graves v. U.S.*, 961 F. Supp. 314, 320 (D.D.C. 1997), *reconsideration denied*, 967 F. Supp. 572.   The intracorporation immunity doctrine is based on the premise that a "corporation cannot conspire with itself any more than a private corporation can, and it is the general rule that the acts of the agent are the acts of the corporation."  *Hilliard v. Fergusan*, 30 F.3d 649, 653 (5th Cir. 1994) (citation omitted).  The general rule has been applied in cases against the District and its agencies.  *See Gladden v. Barry*, 558 F. Supp. 676 (D.D.C. 1983), *and Michelin v. Jenkins*, 704 F. Supp. 1 (D.D.C. 1989). In dismissing the plaintiff's § 1985 claim in *Gladden*, for example, the court said that "the weight of authority holds that there can be no conspiracy if the conduct complained of is essentially a single act by a single entity."  *Gladden*, *supra*, 558 F. Supp. at 679.

In this case, Plaintiff's allegations only deal with the alleged action of employees of the District of Columbia Metropolitan Police Department.  In addition to the Officer Wallace, Plaintiff has also identified as potential defendants former Chief of Police Charles Ramsey, John Doe Supervisors #1 and #2 and, John Doe #3 and #4.   Compl. ¶¶ 3 and 4.   Plaintiff asserts that all of the identified defendants "acted as an employee and/or agent of the defendant District of Columbia."  *Id.*   Since all of the individuals identified by Plaintiff are employees of the District of Columbia, Plaintiff's conspiracy claim under §1985 is barred by the intracorporation immunity doctrine.

**X.    Since Plaintiff cannot maintain a viable claim under §1985, Plaintiff's §1986 claim must fail.**

In order to maintain a claim under 42 U.S.C. § 1986, Plaintiff must first establish a viable claim under §1985.  Since Plaintiff cannot establish a viable claim for conspiracy under §1985, she cannot maintain a claim under §1986.  *In Re: Rodriguez*, 2005 U.S. App. LEXIS 22400 (D.C. Cir., October 14, 2005, Filed) ("a colorable claim under § 1985 is a prerequisite to a claim under § 1986") (citing, *Mollnow v. Carlton*, 716 F.2d 627, 632 (9th Cir. 1983); *Hicks v. Williams*, 2006 U.S. App. LEXIS 20423 (D.C. Cir., August 7, 2006, Filed); *Brown v. Sim*, 2005 U.S. Dist. LEXIS 35415 (D.D.C., September 30, 2005, Decided) (The statute establishes unambiguously that a colorable claim under 42 U.S.C.S. § 1985 is a prerequisite to stating an adequate claim for neglect to prevent under 42 U.S.C.S. § 1986).

Since Plaintiff's §1986 claim can only be brought following a successful §1985 claim Plaintiff cannot maintain a claim against the Defendants under §1986.

**XI.    Plaintiff's claim for equitable relief (Count VIII) should be dismissed because this Court cannot order the District to terminate the employment of Officer Wallace.**

It appears from the complaint that Plaintiff's is asking this court to exercise its equitable powers and order the District of Columbia to terminate Officer Wallace. Compl. ¶ 75.   Count VIII should be dismissed because this Court cannot order the District of Columbia to terminate Officer Wallace.

Conclusions

For the forgoing reasons, the Defendants' motion for summary judgment should be granted.

Respectfully submitted,

LINDA SINGER
Attorney General

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II

/s/David A. Jackson/s/
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

```
_____
                                :
LATASHA M. COTTON,              :
                                :
        Plaintiff,              :
                                :
                                :    C.A. No. 1:05CV011047 (RMU)
        v.                      :
                                :
DISTRICT OF COLUMBIA, et al.,   :
                                :
        Defendants              :
                                :
_____:
```

**DEFENDANTS' STATEMENT OF MATERIAL FACTS
AS TO WHICH THERE IS NO GENUINE ISSUE**

Defendants, by and through the Office of the Attorney General, hereby, submit the

following statement of material facts as to which there is no genuine issue.

1.    Exhibit 1 is a true and accurate copy of portions of Defendant David Wallace's
deposition transcript.

2.    Exhibit 2 is a true and accurate copy of portions of plaintiff's deposition
transcript.

3.    Exhibit 3 is a true and accurate copy Plaintiff's Answer to the Defendants' First
Set of Interrogatories, No. 7.

4.    On June 7, 2007, at approximately 10:00 P.M. Plaintiff was sitting on the steps
outside of her outside apartment, located at 1732 capital Avenue, N.E.
Washington.  Compl. ¶6.

5.    Plaintiff was holding her one year old baby in her arms while her other two
children, approximately three and five years of age,  played in the grass area in
front of the apartment building.  Pl's Depo. at 12, 13, 20-22.

6.    Plaintiff and her neighbor, Denise Robertson, became involved in an argument.
Compl. ¶6; Pl's Depo. at 17-18.

7.      Plaintiff she then gave her children to another neighbor who took the children inside the apartment.  Pl's Depo at 25, 26-29, 33.

8.      Ms. Robertson walked closer to Plaintiff and pulled out a knife and threatened Plaintiff.  Pl's Depo. at 25.

9.      Plaintiff ran away and Ms. Robinson chased after her. Compl. at 6; Pl's Depo at 34, respectively.

10.     When Plaintiff reached the corner she stopped and looked back and saw Ms. Robinson's boyfriend trying to calm Ms. Robinson down. Pl's Depo at 35.

11.     Plaintiff then started to walk towards her apartment and Ms. Robinson again approached Plaintiff with the knife. Pl's Depo at 35-36.  This time Plaintiff just stood there as Ms. Robinson moved the knife back and forth in Plaintiff's face. Pl's Depo at 36.

12.     Officer Wallace was on routine patrol when he pulled into Capital Avenue. Wallace Depo. at 58, 67.

13.     He observed a crowd of 40-50 people in the street fighting, screaming and yelling. Wallace Depo. at 58-60.  All of the people were Black. Wallace Depo. at 60.

14.     Officer Wallace tried to call for back up but had no response form the dispatcher. Wallace Depo. at 63.

15.     The crowd surrounded Officer Wallace's patrol car and, being the only police officer on the scene he feared for his safety.   Wallace Depo. at 64.

16.     Officer Wallace was able to get out of his patrol car and ordered the crowd to disperse and most of the crowd did disperse.  Wallace Depo. at 61-62.

17.     When Plaintiff saw Officer Wallace she walked over to him. Pl's Ans. to Int. No. 7.

18.     People in the crowd yelled that "she" has a knife.

19.     After approaching Officer Wallace, Plaintiff ended up on the ground. Pl's Depo at 44, 54.

20.     Officer Wallace did not strike Plaintiff with such force that caused her to fall to the ground. Pl's Depo. at 53.

21.     Officer Wallace did not strike her with his ASP baton and did not use his knee, shoulder or pull or push her head to force her to the ground. Pl's Depo at 53.

22.     Officer Wallace did not pull his service weapon.  Wallace Depo. at 66.

23.     When Plaintiff was on the ground she was not handcuffed. Pl's Depo at 58.

24.     Plaintiff wanted to get up but the crowd told her to stay down. Pl's Depo at 58.

25.     Plaintiff claims that Officer Wallace walked her to the porch next door and told her to sit down on the step, which Plaintiff did.  Pl's Depo at 77.

26.     Officer Wallace did not force her to the step. Pl's Depo at 77.

27.     Plaintiff's children were looking out the window and crying. Pl's Depo at 72-73.

28.     Officer Wallace did not arrest Plaintiff. Pl's Depo. at 86

29.     Officer Wallace did not report Plaintiff to child protective services. Wallace Depo. at 99.

30.     Officer Wallace completed a police report and gave Plaintiff a copy of the report. Officer Wallace also forwarded his report to a detective.  Wallace Depo. at 79-80.

31.     Plaintiff left the scene with her sister. Pl's Depo. at 86-87.

32.     The next day, Ms. Robertson was arrested.  Pl's Depo. at 111-113

Respectfully submitted,

LINDA SINGER
Attorney General

GEORGE VALENTINE
Deputy Attorney General
Civil Litigation Division

NICOLE L. LYNCH [471953]
Assistant Attorney General
Civ. Lit. Div., Chief Section II

/s/David A. Jackson/s/
DAVID A. JACKSON [471535]
Assistant Attorney General
Office of the Attorney General
441 Fourth Street, NW, 6 South
Washington, D.C.  20001
Direct Line: (202) 724-6618
Facsimile: (202) 727-3625
E-mail:  davida.jackson@dc.gov