**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| **LATASHA M. COTTON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:1:05 CV0147(RU)** |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| **GOVERNMENT, ET AL.** | : | |
| | : | |
| **Defendants,** | : | |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS'**
**MOTION FOR SUMMARY JUDGMENT**

COMES NOW, plaintiff, Latasha Cotton, by and through her undersigned counsel in Opposition to defendants' Motion for Summary Judgment and in support therefor, states as follows:

1.     Defendant, Officer Wallace's conduct violated clearly established constitutional and/or statutory rights, which a reasonable person would have known.

2.     Based on the evidence in this case, plaintiff was falsely arrested and fasley imprisoned.

3.     The force used by Officer Wallace against plaintiff was excessive,

4.     There are facts in this case that can be characterized as negligence and therefore, Counts V and IX must not be dismissed.

5.     Plaintiff has alleged facts sufficient to support a claim of Intentional Infliction of Emotional Distress; therefore, Count VI must not be dismissed.

6.     Plaintiff can prove facts through its expert that will establish that Officer Wallace was negligently supervised.

7.    The claim under 42 U.S.C., Section 1983 against the District of Columbia can be maintained based on the facts of this case.

8.    Plaintiff seeks equitable relief beyond the termination of Officer Wallace.

9.    Plaintiff consents to the dismissal of Count II of the Complaint.

**WHEREFORE**, based on the foregoing, plaintiff respectfully request that this Honorable Court deny Defendants' Motion for Summary Judgment and grant such other and further relief as deemed just and proper.

Respectfully submitted,


By:    Donna Williams Rucker
       Donna Williams Rucker, 446713
       DUBOFF & ASSOCIATES, CHARTERED
       METRO PLAZA ONE
       8401 Colesville Road, Suite 501
       Silver Spring, Maryland 20910
       (301) 495-3131    Office
       (301) 587-1872    Facsimile

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**
**Civil Division**

| | | |
|---|---|---|
| LATASHA M. COTTON, | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:1:05 CV0147(RU)** |
| v. | : | |
| | : | |
| DISTRICT OF COLUMBIA | : | |
| GOVERNMENT, ET AL. | : | |
| | : | |
| Defendants, | : | |

**PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

COMES NOW, plaintiff, Latasha Cotton, by and through her undersigned counsel in Opposition to defendants' Motion for Summary Judgment and in support therefore, states as follows:

**FACTS**

On or about June 7th, 2004, at approximately 10:00 p.m. the plaintiff was outside her residence and a neighbor ("Denise") approached her and involved her in a verbal altercation. (Exhibit 1 – Plaintiff's Deposition at 17)  Plaintiff ignored her and then Denise brandished a knife and threatened plaintiff who ran away, down the street, out of fear for her life and her safety and Denise followed her. (Exhibit 1 at 24-25 & 29)  Plaintiff turned and saw that Denise's boyfriend had intervened and was calming her down.  Plaintiff then turned and began walking back toward her building.  Denise again threatened Plaintiff with a knife. (Exhibit 1 at 35-36)

During this situation, a uniformed police officer, Officer David C. Wallace, arrived on the scene. (Exhibit 1 at 38) Officer Wallace has testified that he drove up to the incident and there were 40 to 50 Black people who were fighting and that these people surrounded his car and

he was forced to stop his car so that he would not hit anyone. (Exhibit 2 – Defendant Wallace's Deposition at 58-60). Wallace claimed that he was in fear of his safety (Exhibit 2 at 64), but that he still got out of his vehicle and attempted to disperse the crowd with loud verbal commands. (Exhibit 2 at 61). Wallace testified that after part of the crowd dispersed no one advanced toward him and that nothing was said to him to put him in fear of his safety. (Exhibit 2 at 66) At his deposition Officer Wallace could not recall any reason that he had to handcuff the Plaintiff. (Exhibit 2 at 72). Officer Wallace did not search Plaintiff or anyone. (Exhibit 1 at 99-100). Upon his arrival, Denise, who still held the knife in her hand, went back inside the apartment building in which she and Plaintiff lived located at 1723 Capital Avenue N.E. in Washington, D.C. (Ex. 1 at pg. 42, 20-22; 43, 1-2 ).

Immediately upon Defendant Wallace's approach to the location, he was advised by several bystanders that the plaintiff had been threatened by a person with a knife and that person had ran into 1723 Capital Avenue N.E. (Exhibit 1 at 43). Notwithstanding what was reported by the witnesses, Defendant Wallace approached the Plaintiff and grabbed her and without speaking to Plaintiff, he clipped the Plaintiff's feet and then grabbed the back of Plaintiff's head and violently forced her body forward, thereby tripping plaintiff and causing her to fall, face first, hard to the ground, incurring physical injuries that required medical care and attention. (Exhibit 1 at 44, 54, 55). Plaintiff placed her hands in front of her face in an attempt to protect herself. (Exhibit 1 at 48) Plaintiff suffered a scarred knee, which was bleeding, and her hand was scrapped and her breast was swollen form having been smashed into the ground when Defendant Wallace clipped her feet from under her. (Exhibit 1 at 103)

Plaintiff attempted to roll over and get up, and at the same time Plaintiff told Defendant Wallace that Denise had a knife. Defendant Wallace threatened Plaintiff by reaching his hand

toward his stick. (Exhibit 1 at 56)  Plaintiff believed that if she got up from the ground that the officer would hit her with his baton. (Exhibit 1 at 121)  Defendant Wallace then pulled Plaintiff to her feet and then placed her in handcuffs. (Exhibit 1 at 58) Plaintiff informed Defendant Wallace that the handcuffs were too tight. (Exhibit 1 at 61)

Plaintiff repeatedly informed Defendant Wallace that she had been assaulted by Denise with a knife and she told officer Wallace that she left when he came into the block.  (Exhibit 7, pg. 53, 7-12).

Despite being advised by several individuals that this person, Denise, had threatened Plaintiff with a knife, Defendant Wallace failed to arrest the person or even investigate Plaintiff's complaint. Defendant Wallace, instead told Plaintiff to shut the f*** up and forcefully transported Plaintiff, who was still in handcuffs, to an abandoned building next to her apartment building, and made plaintiff sit. (Exhibit 1 at 75 & 99).  At no time has Officer Wallace testified that the Plaintiff attempted to assault him. (Exhibit 2 at 119).

Defendant Wallace threatened Plaintiff by telling her that he was going to take her to jail and that her children would be taken by child protective services.  (Exhibit 1 at 72).  Plaintiff, throughout this horrific incident was having an anxiety attack. (Exhibit 1 at 77) Defendant Wallace who is himself a certified EMT (Exhibit 1 at 18 & 19) never asked Plaintiff if she needed medical attention. (Exhibit 1 at 84).

Defendant Wallace was approached by Plaintiff's sister who told Wallace that plaintiff had anxiety and was not well able to handle matters like this, and that whatever he wanted they would do.  (Exhibit 1 at 86 & 87).  Officer Wallace would not take the handcuffs off of plaintiff until after plaintiff's sister begged him not to take plaintiff to jail and not send her children to

Child and Family Services; plaintiff agreed to go with her sister and leave her home. (Exhibit 1 @ pg. 86, 17-22; pg. 87, 1-7).

Once Plaintiff was able to return to her apartment she called the police emergency line and asked to make a complaint about how what had just occurred with Officer Wallace. (Exhibit 3). After waiting Plaintiff then called the police non-emergency number and again asked to speak with a supervisor and informed them that she was still waiting and that she was injured. (Exhibit 3). Plaintiff then placed a third call requesting a supervisor as well as informing them that Officer Wallace had thrown her on the ground and had also let Denise leave the scene with a knife after he had been told that Denise had threatened the Plaintiff with said knife. (Exhibit 3) Plaintiff also informed the dispatcher that the officer had not written a police report. (Exhibit 3) Plaintiff then called to the police a fourth time to ask for an official to come to her home regarding the incident with Officer Wallace. (Exhibit 3) Plaintiff was informed that she would have to come into the station to fill out a complaint and be interviewed. (Exhibit 3) Plaintiff then called back a fifth time and asked them to just send an officer out who could take a report until Plaintiff could get to the station to make the complaint. (Exhibit 3)

Due to this incident Plaintiff's anxiety attacks have come back and her doctor has had to increase her medication. (Exhibit 1 at 108-110) Plaintiff is frightened of the police and has a difficult time driving if a police car is around her, she also has nightmares about the officer shooting her and about going to jail. (Exhibit 1 at pgs. 108-110)

## STANDARD OF REVIEW

Summary judgment is appropriate only in circumstances where "the evidence is such that a reasonable jury could not return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 91 L. Ed. 2d. 202, 106 S. Ct. 2505 (1986). In deciding a motion

for summary judgment the district court is obligated to view the available evidence in the light most favorable to the nonmoving party. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Popham, Haik, Schnobrich, Kaufman & Dotty, Ltd. V. Newcomb Securities Co.*, 243 U.S. App. D.C. 43, 751 F.2d 1262, 1263 (D.C. Cir. 1985) ("any doubt is to be resolved against the moving party"). In *Anderson*, the Supreme Court made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

The moving party bears the burden of demonstrating the absence of any genuine issue of material facts. *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Richardson v National Rifle Association,* 871 F. Supp. 499 (D.D.C. 1994). The defendant is thus entitled to summary judgment only if the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Id.*

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury **might** return a verdict in his favor. If he does so, there is a genuine issue of fact that requires trial." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added).

"The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Wallace,* 1998 D.C.App.

LEXIS 9, at *9; *McBryde v. Amoco Oil Co.,* 4040 A.2d 200, 203 (D.C. 1979).    In addition, all ambiguities must be resolved in plaintiff's favor.  *See Bible Way Church of Our Lord Jesus Christ of the Apostolic Faith v. Beards,* 680 A.2d 419, 430 (D.C. 1996).  Given these considerations, "unless it is beyond doubt that the plaintiff can prove no set of facts in support of [her] claim which would entitle [her] to relief," a pleading should not be dismissed.  *Id.*

Under a Rule 56 analysis, defendant's motion must fail as plaintiff has adequately stated claims upon which relief can be granted.

## ARGUMENT

### I.    Defendant, Officer Wallace's Conduct Violated Clearly Established Constitutional and/or Statutory Rights Which a Reasonable Person Would Have Known.

Officer Wallace is not entitled to qualified immunity because his actions were not objectively reasonable and he violated Plaintiff's clearly established constitutional rights.

Although *Saucier v. Katz*, 533 U.S. 194, 200 (2001) and *Lenderman v. United States*, 291 f.3d 36 (D.C. Cir. 2002), state that under certain circumstances government officials enjoy qualified immunity from constitutional and statutory claims against them, in this case immunity is not warranted.  Here, Plaintiff has evidence, which will show that Officer Wallace violated her Constitutional rights when he falsely arrested her, falsely imprisoned her and subjected her to the use of excessive force.  Plaintiff's evidence will satisfy the two-fold inquiry required in *Brosseau v. Haugen*, 543 U.S. 194 (2004), when determining if a government officer is entitled to qualified immunity.  First, it is clear that if Plaintiff's allegations in her complaint are true, Officer Wallace's conduct violated a constitutional or statutory right.  Second, the rights Plaintiff alleges were violated had been clearly defined and established at the time of his actions.  A

reasonable official would have understood that what Officer Wallace did was wrong.  Therefore, based on *United States v. Lanier*, 520 U.S. 259, 270 (1997), liability attaches to Officer Wallace.

Liability attaches to Officer Wallace and he is not entitled to qualified immunity even when you examine whether Plaintiff's rights were clearly established, not in a broad sense but in light of the specific context of this case.  A reasonable officer in Officer Wallace's position would have known that what Officer Wallace did to Plaintiff violated her Constitutional rights and other statutory law.  In that regard, Officer Wallace finds no protection in *Hope v. Pelzer*, 536 U.S. 730, 739 (2002), as cited in his motion for Summary Judgment.  This Court, given the facts in this case can answer the salient question addressed in *Hope*, namely "whether the state of the law [at the time of the state action] gave respondents fair learning that their alleged treatment of [the Plaintiff] was unconstitutional."  The clear answer is that Officer Wallace should have known his actions towards Plaintiff violated her constitutional rights.

Plaintiff was arrested by Officer Wallace without Probable Cause in violation of the 4th Amendment to the United States Constitution.  Defendants allege in this case that Ms. Cotton was not arrested.  However, Plaintiff's expert, Robert Klotz, states that based on the facts in this case, plaintiff was in fact arrested and he did not have probable cause.  (Ex. 4).  Defendants' offer no expert testimony to support their assertion that plaintiff was not arrested, therefore, plaintiff's evidence that she was arrested is uncontroverted.  Officer Wallace did not even have reasonable suspicion that would justify detaining Plaintiff under *Terry v. Ohio*, 392 U.S. 1 (1968).  Again, Defendants offer no expert testimony to support their position that Officer Wallace has reasonable suspicion to detain Plaintiff under *Terry*.  Even when you look at the totality of the circumstances as the officer on the scene experienced them to determine if reasonable suspicion existed in this case, as required by *United States v. Moore*, 364 U.S. App.

D.C. 281; 394 F. 3d 925, 2005 (2005), Officer Wallace did not have reasonable suspicion to believe that Ms. Cotton had committed or was about to commit a crime.     As a matter of fact, the evidence in this case clearly shows that Officer Wallace considered Plaintiff to be a victim (Ex. 6).  In his Report, Officer Wallace refers to plaintiff as the victim in this incident.  (Ex. 4).

Assuming, arguendo, that Officer Wallace had reasonable suspicion as it relates to plaintiff, Officer Wallace's detention of Plaintiff went far beyond detaining Plaintiff to verify her identity or specific facts.  In this case, Plaintiff states that she and people in the area repeatedly told Officer Wallace before and after he placed her in handcuffs that she was not the person with the knife, and the person who had the knife was identified by name and she was pointed out in the crowd.  (Ex. 1 pg. 43; 49, pgs. 18-21).  Plaintiff was in custody much too long and beyond the time needed to ascertain facts permitted by *Terry* and *Moore*.   After Wallace had Plaintiff in custody, it was apparent immediately that she did not have a knife and that it was this other person, Denise Robertson, who had started the fight and who had tried to assault Plaintiff with a knife.

Defendants cite *U.S. v Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) to show that "when a police officer fears for his safety, the use of handcuffs does not exceed the bounds of an investigatory stop, nor does it transform the stop to a formal arrest."  As stated above, Officer Wallace did not have reasonable suspicion to believe that plaintiff had committed or was about to commit a crime.  Further, there is no evidence that plaintiff attempted to resist Officer Wallace's actions, "made furtive gestures", "ignored police commands", or attempted to flee or otherwise frustrated police inquiry".  In that regard *Womak v. United States*, 673 A.2d 603, 609 (D.C. 1996), cited by defendants, is not applicable.

Contrary to Defendant's representation that Officer Wallace "briefly detained plaintiff so that he could investigate what crimes if any had been committed," Plaintiff was grabbed by her head, she had her feet clipped from under her as she was thrown forcefully forward to the ground by Officer Wallace. Plaintiff was then placed in handcuffs and told that she was going to jail and her kids were going to Child Services. (Ex. 1 pg. 72). After Plaintiff was in handcuffs, Officer Wallace did not make any attempt to ascertain facts from Plaintiff as to what had occurred. He arrested Plaintiff, moved her down the street to an abandoned building where he continued to represent that Plaintiff was going to jail and her children would be taken away from her. As a matter of fact Officer Wallace had plaintiff in custody long enough for plaintiff's sister to arrive after being informed of her sister's arrest.

Not even at that point did Officer Wallace release plaintiff, he requested plaintiff's sister to agree to remove Plaintiff and Plaintiff had to promise that she would take her children and leave their apartment as ordered by Officer Wallace (Ex. 1 of pg. 87). Officer Wallace questioned people in front of Plaintiff's building about her children, and Denise Robertson, the girl with the knife, was one of the people to whom he asked these questions. (Ex. 1. pg. 73, 3-5). There is no evidence that Officer Wallace questioned any person regarding the incident Plaintiff was trying to tell him about, and Officer Wallace's claims that he "canvassed the area looking for Denise Robertson" are not credible since Ms. Robertson lived in Plaintiff's building and he never went upstairs to knock on her door. (Ex. 2 Pg. 75, 7-9; pg. 77).

Defendants offer no credible evidence that Officer Wallace had reasonable articulable suspicion that a crime had been or was about to be committed when he came into Plaintiff's neighborhood. Officer Wallace alleges that there was a "large fight", there was "roughly 40, 50

people" in the street "yelling, screaming, fighting" and his "vehicle got surrounded". (Ex. 2 pg. 58, lines 17-22).

The allegation by Officer Wallace that 40-50 people were involved in a street fight when he came into the block is disputed by plaintiff and the facts in this case.  What is not disputed is that when Officer Wallace arrived, there were a number of Black people in the street.  Plaintiff provides that there were people in the street who had been watching Denise's actions, but they were not fighting they were telling Officer Wallace that Denise Robertson had a knife. (Cotton Deposition, page 431, line 21).  After Officer Wallace entered the street, Denise Robertson walked towards the porch part of Plaintiff's building where the incident had began (Ex. 1 pg. 44, lines 1-5).  Besides there being a crowd of Black people, even Officer Wallace cannot offer anything else that allegedly caused him to fear for his safety.  Officer Wallace claims today, 40-50 people were fighting, they were yelling and screaming and yet he asks this court to believe that he exited his vehicle alone, without back up on the way and used loud verbal commands, without the use of a mega phone, but in his natural voice, simply asking the crowd to disperse. (Ex. 2 pg. 59, lines 7-22; pgs. 60-62, 1).  Next, Officer Wallace alleges the crowd listened to him and disbursed, no one stayed around his vehicle, no one was still fighting, he knows of no person injured or anyone with a weapon.  Officer Wallace's story today is not credible and goes against the facts in this case. (Ex. 2 page 62-63, 1-6).

Even according to Officer Wallace's allegations of what occurred by the time he had made any contact with Plaintiff, he had no reason to fear for his safety, the crowd had dispersed, no one else was fighting and his vehicle was no longer surrounded.  Defendants argue at page 11, at the top of the page:

> "[t]he crowd surrounded Officer Wallace's police car and he feared for his safety.
> Wallace Depo. at 64.  Once Officer Wallace got out of his police car, Plaintiff

approached him and People in the crowd shouted she has a knife, Pl's Ans. To Int. No. 7 and Pl's Depo. at 43."

First, Plaintiff in her deposition at page 43 does not state "the crowd shouted she has a knife".    At page 43, plaintiff clearly points out that the people gathered were telling Officer Wallace that "Denise had a knife".  It is critical to note here the fact that Officer Wallace's testimony does not support what Defendants have argued in their Summary Judgment Motion. The story Officer Wallace tells is set forth above.  He claims when he got to the scene, he got out and dispersed the crowd.  At page 58 of Officer Wallace's deposition he states, "I got out and initiated to disperse the crowd" (lines 17-22).  The only reasons Officer Wallace offers for allegedly fearing for his safety is because numerous people were allegedly fighting in the street and he was one officer in a crowd of 40-50 people.  (Ex. 2 pg. 64, lines 6-8).  So once the crowd dispersed, as Officer Wallace testified it did, there remained no basis to fear for his safety, and no other reason for allegedly fearing for his safety is offered by Defendants.  Therefore when Officer Wallace approached Plaintiff, grabbed Plaintiff by the neck, clipped her feet from under her while pushing her forward, and then arrested Plaintiff and placed her in handcuffs the alleged cause for him to fear for his safety did not exist.

Based on the facts in this case, a reasonable jury could conclude that officer Wallace did not have any reasonable basis to detain Plaintiff, no basis to arrest her and a reasonable officer would have known this at the time of the incident.

**II.    Plaintiff was arrested based on the evidence in this case.**

Plaintiff was arrested by Officer Wallace without Probable Cause.  (Ex. 4).  Plaintiff's expert witness, Robert Klotz, will testify that Officer Wallace arrested Plaintiff and that when he did so he did not have probable cause.  Plaintiff's expert will testify that Officer Wallace did not even have probable cause to detain Plaintiff.

As stated above, according to Officer Wallace's rendition of the facts, by the time he made contact with Plaintiff, the crowd, which is the only thing that allegedly placed him in fear for his safety, had dispersed. (Ex. 2 pg. 66, 16-18; Ex. 8, Pg. 250, 2-6).  There is no evidence that Plaintiff resisted arrest or offered any form of resistance in this situation.  After arresting Plaintiff, Officer Wallace took her over to an abandoned building and kept her there until he released her under her sister's care.

Also, it is critical to note that Officer Wallace never states that he believed Plaintiff had a knife.  As a matter of fact, based on Officer Wallace's own report, he considered Plaintiff a victim, not a suspect. (Ex. 6; Ex. 9).  Despite Defendant's representations to the Court, Plaintiff does not state at pages 86-87 of her deposition that she was in handcuffs for only twenty minutes. As a matter of fact twenty minutes is not mentioned in any part of the text Defendants refer this Honorable Court to.  Starting at page 85, lines 16-22, and continuing to page 86-87, the testimony goes as follows:

```
Q      How long were you in handcuffs?
A      A long time.
Q      For how long?
A      I can't – I can't give you an estimate of time, but I was in
       handcuffs a very long time.
Q      Do you know if it was more than 15 minutes?
A      Yeah, it was more than 15 minutes
Q      More than an hour
A      I wouldn't be able to tell you that because at that time I
       wasn't timing myself, but I was in handcuffs a long time.
Q      Did you ever hear Officer Wallace say, "You're under
       arrest"
A      Yes
Q      What did he say?
A      Hold on. Can you ask me that again.
Q      Did you ever hear Officer Wallace say to you that you
       were under arrest?
A      Under arrest –
Q      Yes.
A      - - or going to jail?
```

Q     No, under arrest.

A     No.

Q     No, at some point did Officer Wallace take the handcuffs off you?

A     Yes.

Q     And what did he say to you as he's taking the handcuffs off you?

A     I can't remember exactly what he said, but what I can remember was, him and my sister negotiated that if he took the handcuffs off of me, I would have t go with her and leave my house, and she begged him that she will take me with her so that I wouldn't go to jail and my kids wouldn't go to child and family services.

Q     Did he take the handcuffs off?

A     Yes.

Q     And did you leave with your sister?

A     I don't understand what you're saying.

Q     Well, I thought you just told me that your sister and Officer Wallace negotiated and they said if he takes the handcuffs off you, that you have to leave with your sister?

A     Yes, he did, but if you're talking about right away.  Are you talking about did I leave like once he took me out of the handcuffs, did I leave?

Q     Yes.

A     I can't remember leaving right away.

Q.    Do you recall going back into your apartment?

A     Yes.

Defendants have no expert testimony to offer to support their allegation that Plaintiff was not falsely arrested and imprisoned by Officer Wallace, and despite Defendants argument to the contrary, a reasonable jury could find that Plaintiff was arrested and falsely imprisoned.

**Plaintiff has clearly stated that she was placed in handcuffs, moved from the location of the incident and told to sit on the steps of an abandoned building.  Defendant Wallace has even himself testified that he does not remember if the Plaintiff tried to assault him.  Defendant Wallace does admit that he did not search the Plaintiff or anyone else at the scene.  If Officer Wallace was so concerned for scene safety and the safety of others then why would he not search

15

for a potentially deadly weapon when, allegedly, the crowd was yelling that she (meaning Denise) had a knife.  Even if Defendant Wallace did believe that the Plaintiff had a knife, he should have searched her and questioned those in the vicinity in order to determine who saw the Plaintiff with the alleged knife.

In *U.S. v. Atchley*, 474 F.3d 840, 849 (6th Cir. 2007) the suspect was not only acting suspicious but the police officers were acting on a tip regarding drug manufacturing occurring in a motel room.  Atchley became combative and swung at the police which in fact assisted another individual to flee the scene.  In the case at bar, the Officer was not acting on any tip and in fact just happened to be driving through the area when he noticed a large group, 40 – 50 people fighting.  If it was reasonable for Officer Wallace to place Plaintiff in handcuffs than it would also be reasonable that Defendant Wallace would have placed any one else who had been fighting under arrest, barring that he should have called for backup in order to secure all those who were fighting at the scene, so that he could then question everyone to ascertain the facts of the incident.

Instead of questioning the Plaintiff about the incident, Defendant Wallace instead clipped the Plaintiff feet from under her and grabbed the back of Plaintiff's head and forced her violently to the ground, injuring her, then Officer Wallace yanked her up and placed handcuffs on her too tightly, moved her from the scene and informed her that she was going to go to jail and that her children would be turned in to Child Protective Services.  The fact that the Plaintiff did not ultimately go to jail and Defendant Wallace did not turn her children in to child protective services does not negate the fact that the Plaintiff fully believed that Defendant Wallace was placing her under arrest and was going to take her to jail.

In their Motion for Summary Judgment the Defendants' present case law which stated that the use of handcuffs in the investigatory stop context is reasonable in situations where suspects attempted to resist police, made furtive gestures, ignored police commands, attempted to flee, or otherwise frustrated police inquiry. *Womack v. U.S.*, 673 A. 2d 603 (D.C. 1996).   The Defendants' have actually given the court the exact reason why the Plaintiff was under arrest and was not simply being detained.  There is no testimony that the Plaintiff attempted to resist arrest, in fact she testified that she was afraid to move for fear that Officer Wallace would hit her with the stick on his belt. Officer Wallace, as stated above, testified that the Plaintiff did not attempt to assault him, he did not testify that the plaintiff attempted to flee, ignored any of his commands or otherwise prevented him from conducting his duties as a Police Officer in the District of Columbia Metropolitan Police Department.

By its very absence the Defendants have shown that the Plaintiff was cooperative in her dealings with the police, she was not combative, attempting to flee, resisting police orders or interfering in police duties.  The Plaintiff was in actuality the victim of a crime and was attempting to inform Officer Wallace of the same when he told her to shut the f*** up.

### III.     The Force Officer Wallace Used Against Plaintiff was Unnecessary and Excessive

Defendants are correct that a police officer is privileged to use reasonable force in carrying out his official duties.  However, in this case, the use of force by Officer Wallace against plaintiff was unnecessary and excessive.  (Ex. 4).  There is detailed testimony from plaintiff, referenced even by defendants in their Motion for Summary Judgment, which describes the force used by Officer Wallace.  Plaintiff alleges that Officer Wallace grabbed her by the back of her head, clipped her feet from under her and pushed her forward to the ground. (Ex. 1 pg. 44,

7-11; pg. 54, 14-21).  Plaintiff also testified that Officer Wallace put the handcuffs on extremely

tight and she told him that they were too tight.  (Ex. 1, pg. 61. 1-3).

As defendants point out in their Motion, *Holder v. District of Columbia*, 700 A.2d 738,

741-742 (D.C. App. 1997), states that a police officer's use of force is an issue beyond the kin of

the average jury.  Plaintiff's expert, Robert Klotz, will testify that use of force by Officer

Wallace against plaintiff was unnecessary and excessive.  Defendants have not named an expert,

and there is no expert who will offer testimony in this case on behalf of the District of Columbia

or Officer Wallace, on  any of the issues herein.  Since the use of force issue must be presented

through expert testimony and plaintiff has the only expert, defendants will not be able to dispute

plaintiff's expert opinion that officer Wallace's use of force in this case was both unnecessary

and excessive.

Based on the foregoing, and because a reasonable jury could conclude that Officer

Wallace used excessive and unnecessary force against plaintiff, defendant's request for the Court

to dismiss Count IV of plaintiff's Complaint should be denied.

IV.     **There are facts in this case that can be characterized as negligence and
        therefore, Counts V and IX must not be dismissed.**

An individual who has been injured by a District police officer may sue under one or

more common law theories of legal liability such as assault and battery or negligence.  *See,*

*Holder v. District of Columbia,* 700 A.2d 738, 741 (D.C. 1997

As noted in *Holder,* "where there is sufficient evidence to submit to a jury the question of

assault and battery [that is, where a reasonable jury could conclude that excessive force was

used] there *may* be, on the facts of a particular case, sufficient evidence to submit the question of

negligence as well." *Holder* at 742.  Both issues "involve an inquiry into the reasonableness of

the police officer's actions. For assault and battery the inquiry is whether the officer's conduct

was reasonably necessary and thereby privileged; and for negligence the inquiry is whether the officer's conduct violated the standard of care of a reasonably prudent police officer." *Id.*

In certain circumstances the events surrounding the application of excessive force may lend themselves to a theory of negligence as well as assault and battery. What is required to justify such an instruction on at least one distinct element, involving an independent breach of a standard of care beyond that of not using excessive force in making an arrest, which may properly be analyzed and considered by the jury on its own terms apart from the intentional tort of battery and the defense of privilege.

In the category of cases that supposedly prohibit sending both assault and battery and negligence claims to the jury, the District cites and principally relies on *Maddox v. Bano,* 422 A.2d 763 (D.C. 1980), and *Sabir v. District of Columbia,* 755 A.2d 449 (D.C. 2000). In *Maddox,* it was established that a trial court is not bound by a plaintiff's characterization of an action and the court must look to whether both intentional and negligence claims are specifically pled. The complaint must specify a negligent act and characterize a breach of duty, which might have given rise to liability. The court noted that use of the terms "carelessly and negligently," without more, are conclusory and do not raise a cognizable claim of negligence. Maddox's complaint described injuries received "as a consequence of excessive force alleged to have been exercised by the arresting officers." There was no dispute that the physical contact was intentional. His complaint thus failed to specify the necessary elements to proceed with a negligence action. Since the statute of limitations had run on the intentional tort, summary judgment was properly granted. *Maddox* at 764-65.  However in the case at bar, Plaintiff has clearly and unequivocally stated negligence causes of action that are separate and distinct from her claims of intentional assault, battery and intentional infliction of emotional distress. (See Plaintiff's complaint)

19

Plaintiff has alleged by and through her Complaint, her deposition testimony and through her discovery answers that the Defendants' were committing intentional torts but were in conjunction therewith were committing acts of negligence against the Plaintiff.

Officer Wallace was not acting reasonably at the time of the incident, he did not investigate, he did not search for the knife, he did not search the Plaintiff, and Officer Wallace did not identify the individuals in the crowd including the Plaintiff and the neighbor with the knife. Officer Wallace failed to detain or question the people in the crowd, he did not go to Denise's home, he ordered the Plaintiff to leave home without authority, he threatened to take Plaintiff to jail and have her kids taken by child protective services.  Officer Wallace did or did not do all of these enumerated things and the more egregious part, is that he did all of this to the victim of the crime.

Plaintiff has specifically plead that even after Defendant Wallace was informed that the Plaintiff suffered from anxiety and was not able to cope with a such as she was experiencing, he continued to require the Plaintiff to remain on the steps of the abandoned building, with the too tight handcuffs, believing that she was going to jail and that her three children would be taken away from her by child protective services.

Plaintiff made it clear to Defendant Wallace that she was the victim and even identified the individual who had threatened her with a knife.  As evidence of this the Plaintiff complained to the appropriate officials, to include making at least four telephone calls to the police 911 or 311 lines in order to report the intentional and negligent actions of Officer Wallace.

In *District of Columbia v. White,* 442 A.2d 159 (D.C. 1982) the Court addressed an award of damages to survivors in a wrongful death action based on the shooting by a police detective of what turned out to be an unarmed man. The plaintiffs had filed an action against the

government alleging assault and battery, negligent use of excessive force, and negligent training

of the detective; a jury found the government liable for negligence (without specifying the type

of negligence) but not for assault and battery. This court decided that the issue of negligent

training should not have been submitted to the jury, requiring a new trial, but that the other

claims were permissible. *Id.* at 162-63. Basically there were two scenarios for the shooting, one

where the decedent was standing with empty hands having stopped fleeing, and the other where

the officer shot in self-defense as the decedent turned toward him with what was thought

erroneously to be a gun. In upholding the separateness of the negligence claim, the court noted

the admission into evidence of a police regulation on an officer's safe use of firearms, which

established that a duty was owed to the decedent, a breach of which would constitute evidence of

negligence.

The *White* court noted that it was not bound by plaintiff's claims of negligence and

instead should "examine the elements of the alleged offense to determine which causes of action

the complaint actually states." *Id.* at 162. Citing *Maddox, supra,* the court noted that the

complaint must specifically allege negligence and not merely conclusory allegations. However,

*White* found that *District of Columbia v. Downs,* 357 A.2d 857 (D.C. 1976), was controlling for

the proposition that "a jury could properly find negligence in the shooting death of a decedent

even though it did not find assault." The court noted that *White* and *Downs* were factually

different from *Maddox,* where the negligence allegations were dismissed due to their conclusory

nature. *White* at 164 n.13.


**V.      Plaintiff has alleged facts sufficient to support a claim of Intentional Infliction of Emotional Distress, therefore, Count VI must not be dismissed.**

Plaintiff has asserted a *prima facie case* regarding the many allegations contained with in the Plaintiff's Complaint.  As stated above, plaintiff was obviously shocked, offended, scarred and in extreme fear due to the actions of Defendant Wallace.

Even after Defendant Wallace was informed that the Plaintiff suffered from anxiety and was not able to cope with a such as she was experiencing, he continued to require the Plaintiff to remain on the steps of the abandoned building, with the too tight handcuffs, believing that she was going to jail and that her three children would be taken away from her by child protective services.

At the time and date of the incident Officer Wallace was a four year veteran of the police force and knew or should have known that when you threaten to take a woman's children away from her that she is going to suffer extreme emotional distress and agitation which may and in this case did require the Plaintiff to seek medical and psychological help.

It is well establish law that the defendants' are required to take the Plaintiff as they find them and it is unfortunate for Officer Wallace that he decided to use excessive force and verbal threats against a woman who is well known to experience anxiety attacks and can not cope with extremely stressful situations such as the one she experienced on the date in question at the hands of Officer Wallace.

Plaintiff made it clear to Defendant Wallace that she was the victim and even identified the individual who had been threatening her with a knife.  Plaintiff complained to the appropriate people, including making five telephone calls to the police 911 or 311 lines in order to report the actions of Officer Wallace.  (Ex. 3).

Furthermore, in this case, it is clear that a jury could conclude that the Defendant's actions of forcing Plaintiff to the ground, yanking her back up to her feet, handcuffing her, moving her from

the scene, detaining her and informing her that she was going to jail and that her children would be referred to child protective services is extreme and outrageous conduct and goes beyond all possible bounds of decency.

Based on the arguments already presented, and the evidence in this case Defendants have failed to establish, that on the intentional infliction of emotional distress claim, they are entitled to judgment as a matter of law and their request to grant summary judgment should be denied.

## VI.    Plaintiff Can Prove Facts Through Her Expert That Will Prove That Officer Wallace was Negligently Supervised.

As the Defendant's have so aptly pointed out the Courts generally require expert testimony regarding the standard of care in cases concerning allegations of negligent police operations, supervision and training. *Griggs v. Washington Metropolitan Area Transit Authority, et al.*, 442 A.2d 159, 164-165 (D.C. App. 1982).

The decision in *Holden v. District of Columbia*, 700 A.2d 738, 741-742 (D.C. App. 1997) states that the use of force as in pertains to Police Officers is an issue beyond the kin of the average jury and therefore an expert witness is required to testify to the matter.  While the Defendant's argue about what the Plaintiff's expert, Robert Klotz, will testify to and what is and what may not be contained within his report they have neglected to inform the court that they themselves have no expert with which to contradict the testimony and opinions of Mr. Klotz regarding the standard of care regarding Police supervision.

Mr. Klotz states that Ida George[1], who arrived at the scene of the incident, observed actions of Defendant Wallace and was told by someone, she does not recall who, that Officer Wallace had thrown Plaintiff against a car.  Mr. Klotz goes on to state that "[I]t appears that

---

[1] Sergeant Ida George married on or about February 2, 2006 and changed her last name to Houser.  Ida Houser was promoted and is now a Lieutenant for the Metropolitan Police Department.

Houser made no investigation into the propriety of this action as no use of force reports, as required by the D.C. Police Department were filed." This action or inaction on the part of Officer Wallace's supervisor clearly shows that members, supervisors, and/or officials of the Metropolitan Police Department were not adequately supervising Defendant Wallace. (Ex. 4).

In fact, Houser admits that her on scene investigation of plaintiff's complaint was missing critical information. Lt. Houser testified that during her on scene investigation she was not made aware that plaintiff had her feet clipped from under her and she fell to the pavement, or that Officer Wallace pushed plaintiff to the ground or that plaintiff was handcuffed. (Ex. 8 at Pg. 256, 3-22, pg. 257, 1-19). Notwithstanding, the facts and evidence in this case, the District of Columbia has not disciplined Officer Wallace.

The Defendant's attempt to get creative with the facts and assert that simply because Mr. Klotz may or may not have put forth any opinions regarding police training or supervision that this Court should automatically dismiss the Negligent Supervision and Respondeat Superior claims in Count VI of the Plaintiff's complaint, the Negligent Infliction of Emotional Distress in Count V of the Complaint as well as count IX which is Negligence. Plaintiff will present evidence from which a reasonable jury can conclude that defendant District of Columbia was negligent and that each defendant negligently inflicted emotional distress upon plaintiff. Therefore, defendants' arguments that any Count with the word negligence, namely Counts V, VII, and IX of plaintiff's Complaint should be dismissed must is without merit and must fail.

VII. **The Claim Under 42 U.S.C., Section 1983 Against the District of Columbia Can Be Maintained Based on the Acts of This Case.**

Defendants state that "A municipality cannot be held liable under 42 U.S.C. § 1983 on the theory of *Respondeat superior.*" as stated in *Monell v. New York Department of Social*

*Services*, 436 U.S. 658, 691 (1978).  Notwithstanding, the District of Columbia can be held liable under §1983 based upon *Monell* nonetheless.  In *Haynesworth v. Miller*, 820 F.2d 1245 (1987), the court acknowledges that *Monell* "firmly established that a municipality can be held liable in damages for constitutional violations".  It also held that liability attaches under §1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the [constitutional] injury…".  This establishes the basic test as to when a municipality can be held accountable for the actions of its employees, agents, or representatives.

In the instant case, Defendants violated Plaintiff's Constitutional rights.  The violation occurred when Plaintiff was forced to the ground by a uniformed police officer for the District of Columbia, Defendant Wallace, who was driving a District of Columbia police cruiser and was later joined by at least one other police officer, specifically Sergeant Ida Houser.

Officer Wallace forced Plaintiff to the ground where she sustained injuries, she was placed in handcuffs, which were to tight Plaintiff was then forcibly moved from the location to an abandoned building where she continued to have an anxiety attack precipitated by the action of Officer Wallace.

It is the custom of police officers in the District to stop and/or detain citizens as permitted by law.  Clearly, the acts of Defendant Wallace indicated that on this morning he represented official policy and custom of the District of Columbia as the actions of stopping, detaining, knocking Plaintiff to the ground, handcuffing, forcibly moving Plaintiff and threatening to take her children were asserted on behalf of his official authority as a police officer for the District of Columbia.  It is by his authority as a District of Columbia Police Officer that Defendant Wallace

could detain the Plaintiff by knocking her to the ground, handcuffing the Plaintiff and forcibly

moving her from the location.

It is apparent in this case that the acts of Defendant Wallace may fairly be said to

represent official policy and it is these actions, noted in plaintiff's complaint to the Citizen

Complaints Review Board ("CCRB") and her Complaint in the matter, that resulted in a

violation of her Constitutional rights and physical and emotional injury to Plaintiff.  (See

Plaintiff's Complaint, *generally*).  Based upon *Monell v. New York Department of Social*

*Services*, 436 U.S. 658, 691 (1978), Plaintiff has properly established that the District is a proper

Defendant in this action, irrespective of any claim of *Respondeat Superior*.

Although *Monell* gives Plaintiff a cause of action against the District of Columbia based

upon Officer Wallace's acts, which fairly represented official policy and/or custom, the District

also has direct liability as a municipality.  "The primary justification for this type of liability is

the recognition that a municipality can act only through those who enable it to function. When an

officer or employee has been delegated power or responsibility to act *for* the municipality in a

given area, he may be acting *as* a unit of the municipal government, thus rendering the municipal

entity liable for his constitutional wrongdoings.  The critical issue, then, is whether the

Municipal representative, when engaging in the activity challenged, can properly be said to have

acted as the alter ego of the Municipality. This inquiry poses a question of fact rather than law

and in order to survive a motion to dismiss, the complainant must set forth a "plausible nexus"

between the action assailed and the authority conferred by the Municipality."  *Haynesworth v.*

*Miller*, 820 F.2d 1245 (1987).

In the instant case, Plaintiff's Constitutional rights were violated as a direct result of the

authority conferred on Defendant Wallace.  Without the authority conferred by the District of

Columbia, Defendant Wallace would not have had the authority to stop, detain, handcuff, and forcibly move Plaintiff from the location.  Defendant Wallace was employed as a police officer and was on duty on the date of the alleged occurrence.  The District of Columbia established a Metropolitan Police Department in §4-101 of the District of Columbia Code. §4-104 of the Code states in part, "The Mayor of said District shall appoint to office, assign to such duty or duties as he may prescribe…".  D.C. Code §4-104 and §4-107, which sets forward the composition of the force and the duties of the positions, clearly show that Defendant Wallace had been "delegated power or responsibility to act *for* the municipality in a given area."  This satisfies the first prong of the test as expressed in *Haynesworth.*

The second prong of the *Haynesworth* test requires that "the municipal representative, when engaging in the activity challenged, can properly be said to have acted as the alter ego of the municipality. This inquiry poses a question of fact rather than the law."  Defendant Wallace was acting as the "alter ego" of the municipality on the evening of this incident. He was wearing a uniform issued by the city, carrying weapons provided by the city, driving a police car provided by the city, and performing the duties established in the D.C. Code.   Defendant Wallace was acting within the course and scope of his employment when he stopped, forcibly through plaintiff to the ground, placed her in handcuffs and forcibly moved plaintiff to an abandoned building without reasonable suspicion or probable cause and against the Plaintiff's will.

Lieutenant Houser was the Defendants 30 (b)(6) witness who was designated, by the District of Columbia to testify about the District's polices and procedures governing the performance of their duties and the law that District of Columbia officers are governed by. Lieutenant Houser testified that the facts given in the PD 251 by Defendant Wallace lacked all

the details of the incident (Houser Deposition 227-228) and she went on to state that an

investigation should have been done if an officer negligence to give a critical piece of

information necessary for an investigation. (Ex. 8, pg. 228).

Plaintiff has demonstrated the liability of the District of Columbia as established by

*Monell v. New York Department of Social Services*, 436 U.S. 658, 691 (1978), and according to

the principals discussed in *Haynesworth v. Miller*, 820 F.2d 1245 (1987).  Wallace, a

Metropolitan Police Officer named in the Complaint had been delegated authority to act in the

area of peacekeeping and law enforcement during the entire time of the incident in question.

Wallace was acting as the alter ego of the municipality, and he was authorized to make decisions

on the street as to how he would handle an individual event, he was not expected to call the

Mayor or the Chief of Police to obtain guidance from them, rather he had the authority that had

been delegated by the District of Columbia.  Officer Wallace, and Lt. Houser were each acting

under the color of law granted to them under the D.C. Code §4-101. §4-105 and §4-107, and by

virtue of their position as police officers for the District of Columbia.

Consequently the District is a proper Defendant under *Monell* and is not entitled to

summary judgment.

**VIII.    Plaintiff seeks equitable relief beyond the termination of Officer Wallace.**

Plaintiff is seeking for the Metropolitan Police Department to adequately train and

supervise its officers and supervisory personnel in order that events such as the one suffered by

the Plaintiff do not occur in the future.  Plaintiff is further requesting that the Metropolitan Police

Department conduct annual training on the use of force, proper detention procedures, proper

arrest procedures, and proper investigatory methods to determine the victim of a crime from the

perpetrator of the crime and grant such other relief as deemed just and proper.

## <u>CONCLUSION</u>

Defendants' are not entitled to summary judgment.  In deciding a motion for summary judgment the court is obligated to view the available evidence in the light most favorable to the nonmoving party.  *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Popham, Haik, Schnobrich, Kaufman & Dotty, Ltd. V. Newcomb Securities Co.*, 243 U.S. App. D.C.  43, 751 F.2d 1262, 1263 (D.C. Cir. 1985) ("any doubt is to be resolved against the moving party").  In *Anderson*, the Supreme Court made clear that "at the summary judgment stage the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial."

The moving party bears the burden of demonstrating the absence of any genuine issue of material facts.  *Adickes v. Kress & Co.,* 398 U.S. 144, 157, 26 L. Ed. 2d 142, 90 S. Ct. 1598 (1970); *Richardson v National Rifle Association,* 871 F. Supp. 499 (D.D.C. 1994).  Defendant has failed to show how the alleged material facts that are not in dispute give rise to a ruling it their favor on a motion for summary judgment.  Plaintiff has stated that Defendant Wallace clipped her feet and shoved her to the ground causing her injury while the Defendants' all state that officer Wallace acted with reasonable force.  If this dispute alone is not enough to give rise to a material fact in dispute than plaintiff would be at a loss as to what is a material fact in dispute that would permit this court to allow a case to be sent to a jury.

The Court's threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).

"[T]he plaintiff, to survive the defendant's motion, need only present evidence from which a jury **might** return a verdict in his favor.  If he does so, there is a genuine issue of fact

that requires trial." See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257 (1986) (emphasis added).

"The allegations in the complaint must be taken as true and construed in the light most favorable to the plaintiff and, if these allegations are sufficient, the case must not be dismissed even if the court doubts that the plaintiff will ultimately prevail." *Wallace,* 1998 D.C.App. LEXIS 9, at *9; *McBryde v. Amoco Oil Co.,* 4040 A.2d 200, 203 (D.C. 1979).

Under a Rule 56 analysis, Defendants' motion must fail as Plaintiff has adequately stated claims upon which relief can be granted.

**WHEREFORE,** based on the foregoing, Plaintiff Latasha Cotton respectfully requests that this Honorable Court deny Defendants' Motion For Summary Judgment, grant a hearing in this matter, and grant such other and further relief as deemed just and appropriate.

Respectfully submitted,


By:   Donna Williams Rucker
      Donna Williams Rucker, 446713
      DUBOFF  & ASSOCIATES, CHARTERED
      METRO PLAZA ONE
      8401 Colesville Road, Suite 501
      Silver Spring, Maryland 20910
      (301) 495-3131    Office
      (301) 587-1872    Facsimile

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

| | | |
|---|---|---|
| **LATASHA M. COTTON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:1:05 CV0147(RU)** |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| **GOVERNMENT, ET AL.** | : | |
| | : | |
| **Defendants,** | : | |

**PLAINTIFF'S STATEMENT OF MATERIAL FACTS IN DISPUTE**

1.      On or about June 7th, 2004, at approximately 10:00 p.m. the plaintiff was outside

her residence and a neighbor ("Denise") approached her and involved her in a verbal altercation.

(Exhibit 1 - Plaintiff's Deposition at Page 17)

2.      Plaintiff ignored Denise and then Denise brandished a knife and threatened

plaintiff who ran away, down the street, out of fear for her life and her safety and Denise

followed her.  (Exhibit 1 at 24-25 & 29)

3.      Plaintiff turned and saw that Denise's boyfriend had intervened and was calming

her down.  Plaintiff then turned and began walking back toward her building.  Denise again

threatened Plaintiff with a knife. (Exhibit 1 at 35 - 36)

4.      During this situation, a uniformed police officer, Officer David C. Wallace,

arrived on the scene.  (Exhibit 1 at 38)

5.      The crowd was just standing around when officer Wallace arrived at the scene.

(Ex. 1 @ pg. 41, 14-16).

6.    Officer Wallace has testified that he drove up to the incident and there were 40 to 50 black people who were fighting and that these people surrounded his car and he was forced to stop his car so that he would not hit anyone. (Exhibit 2 at pgs. 58-60)

7.    Wallace was not in fear of his safety because he still got out of his vehicle and attempted to disperse the crowd with loud verbal commands, he did not wait for backup. (Exhibit 2 at 61- 64).

8.    Officer Wallace was only in fear of his safety until the crowd dispersed, and the crowd dispersed after he existed his vehicle.  (Exhibit 2 at pg. 66, 16-21).

9.     Wallace testified that after part of the crowd dispersed no one advanced toward him and that nothing was said to him to put him in fear of his safety. (Exhibit 2)

10.    Officer Wallace could not recall any reason that he had to handcuff the Plaintiff. (Exhibit 2 at 72)

11.    Upon the officer's arrival, Denise, who still held the knife in her hand, went back inside the apartment building in which she and Plaintiff lived located at 1723 Capital Avenue N.E. in Washington, D.C. (Complaint)

12.    Immediately upon defendant Wallace's approach to the location, he was advised by several bystanders that the plaintiff had been threatened by a person with a knife and that person had ran into 1723 Capital Avenue N.E. (Exhibit 1 at 43)

13.    Notwithstanding what was reported by the witnesses, Defendant Wallace approached the Plaintiff and grabbed her and without speaking to Plaintiff, he clipped the Plaintiff's feet and then grabbed the back of Plaintiff's head and violently forced her body forward, thereby tripping plaintiff and causing her to fall, face first, hard to the ground, incurring physical injuries that required medical care and attention.  (Exhibit 1 at 44, 54, 55)

14.     Plaintiff placed her hands in front of her face in an attempt to protect herself. (Exhibit 1 at 48)

15.     Plaintiff suffered a scarred knee, which was bleeding, and her hand was scrapped and her breast was swollen form having been smashed into the ground when Defendant Wallace clipped her feet from under her. (Exhibit 1 at 103)

16.     Plaintiff attempted to roll over and get up, and at the same time plaintiff told Defendant Wallace that Denise had a knife.  Defendant Wallace threatened Plaintiff by reaching his hand toward his stick. (Exhibit 1 at 56)

17.     Plaintiff believed that if she got up from the ground that the officer would hit her with his baton. (Exhibit 1 at 121)

18.     Defendant Wallace then pulled Plaintiff to her feet and then placed her in handcuffs. (Exhibit 1 at 58)

19.     Plaintiff informed Defendant Wallace that the handcuffs were too tight. (Exhibit 1 at 61)

20.     Plaintiff again informed Defendant Wallace that she had been threatened with a knife and identified the person who had done so and provided her apartment number. Plaintiff further advised defendant Wallace that this person had fled into the apartment building upon his arrival. Denise, the person identified by the plaintiff and several on lookers came back out of the apartment building. (Ex. 1)

21.     Despite being advised by several individuals that this person, Denise, had threatened Plaintiff with a knife, Defendant Wallace failed to arrest the person or investigate plaintiff's complaint. Defendant Wallace, instead told Plaintiff to shut the f*** up and forcefully

transported Plaintiff, who was still in handcuffs, to an abandoned building next to her apartment building, and made plaintiff sit. (Exhibit 1 at 75 & 99)

22.    Defendant Wallace threatened Plaintiff by telling her that he was going to take her to jail and that her children would be taken by child protective services services.  (Exhibit 1 at 72)

23.    Plaintiff throughout this horrific incident was having an anxiety attack. (Exhibit 1 at 77)

24.    Defendant Wallace who is himself a certified EMT (Exhibit 2 at 18 & 19) never asked Plaintiff if she needed medical attention. (Exhibit 1 at 84)

25.    Defendant Wallace was approached by Plaintiff's sister who told Wallace that plaintiff had anxiety and was not well able to handle matters like this, and that whatever he wanted they would do.  (Exhibit 1 at 86 & 87)   Plaintiff agreed to leave with her sister

26.    Once Plaintiff was able to return to her apartment she called 911 and asked to speak with a supervisor regarding the incident that has just occurred in front of her building. (Exhibit 3- Office of Police Complaints radio run transcript)

27.    After waiting Plaintiff then called the police non-emergency number and again asked to speak with a supervisor and informed them that she was still waiting and that she was injured.  (Exhibit 3)

28.    Plaintiff then placed a third call requesting a supervisor as well as informing them that Officer Wallace had thrown her on the ground and had also let Denise leave the scene with a knife after he had been told that Denise had threatened the Plaintiff with said knife.  Plaintiff also informed the dispatcher that the officer had not written a police report. (Exhibit 3)

29.    Plaintiff then called to the police a fourth time to ask for an official to come to her home regarding the incident with Officer Wallace. (Exhibit 3)

30.    Plaintiff was informed that she would have to come into the station to fill out a complaint and be interviewed. Plaintiff then called back a fifth time and asked them to just send an officer out who could take a report until Plaintiff could get to the station to make the complaint. (Exhibit 3)

31.    Due to this incident Plaintiff's anxiety attacks have come back and her doctor has had to increase her medication. (Exhibit 1 108-110)

32.    Plaintiff is frightened of the police and has a difficult time driving if a police car is around her, she also has nightmares about the officer shooting her or about going to jail. (Exhibit 1 108-110)

33.    Plaintiff believed that Officer Wallace was placing her under arrest and that he was going to call child protection services. (Complaint & Exhibit 4 – Robert Klotz report)

34.    Defendant Wallace utilized excessive force when he forced the Plaintiff to the ground. (Complaint, & Exhibit 4)

35.    Defendant Wallace placed Plaintiff under arrest. (Exhibit 4)

36.    Defendant Wallace falsely imprisoned the Plaintiff when he placed her in handcuffs and moved her from the scene of the alleged fight and forced her to sit on the steps of an abandoned building. (Ex 1 at Pg 75).

37.    Parties dispute the amount of time that Plaintiff was forced to sit with the too tight handcuffs on her wrists. (Exhibit 1 & 2)

38.    At no time has Officer Wallace testified that the Plaintiff attempted to assault him. (Exhibit 1 at 119)

39.    Officer Wallace did not search Plaintiff or anyone. (Exhibit 1 at 99-100).

40.    Plaintiff was arrested. (Exhibit 4)

41.    Plaintiff was falsely arrested. (Exhibit 4)

42.    Plaintiff was imprisoned. (Exhibit 4)

43.    Plaintiff was falsely imprisoned.  (Exhibit 4)

44.    Defendant Wallace assaulted the Plaintiff. (Exhibit 4)

45.    Defendant Wallace battered the Plaintiff.  (Exhibit 4)

46.    Defendant Wallace was not properly supervised in his duties. (Exhibit 4, Exhibit

5).

47.    Plaintiff suffered emotional distress. (Exhibit 1 at 77 and 108)

48.    Defendant Wallace was acting in the course and scope of his employment with

the Metropolitan Police Department at the time of the incident. (Exhibit 2 at 7 and 8)

49.    Defendant Wallace intentionally inflicted emotional distress upon the Plaintiff.

(Exhibit 3; Exhibit 1 at 86 and 87)

50.    Defendant Wallace negligently inflicted emotional distress on the Plaintiff.

(Exhibit 1 at 86-87)

51.    Defendants' were negligent in their treatment of the Plaintiff. (Exhibit 1 at  pgs.

54,55,58-61; Complaint generally).

52.    Form 251 was not completed properly by Officer Wallace and neither Sgt. Houser

nor any other supervisor corrected this. (Ex. 4; Ex. 6)

53.    Sgt. Houser did not conduct an investigation. (Exhibit 4)

54.    Plaintiff was thrown to the ground by Officer Wallace. (Exhibit 4)

55.     Officer Wallace used force with Plaintiff that was excessive and unnecessary. (Exhibit 4)

56.     Crowd told Officer Wallace that Denise had the knife and pointed to her.

57.     Plaintiff was not belligerent or brandishing a weapon. (Exhibit 4)

58.     No actions taken by Officer Wallace at the scene as regards Plaintiff was because Officer Wallace was in fear of his safety. (Exhibit 4)

59.     Plaintiff was not charged with any crime. (Exhibit 4)

60.     Wallace had no reasonable suspicion to detain the Plaintiff. (Exhibit 4)

61.     Wallace had no reasonable probable cause to arrest the Plaintiff. (Exhibit 4)

62.     Wallace's account of the event is contrary to Sgt. Houser and other witnesses. (Exhibit 4)

63.     Sgt. Houser made no investigation into the propriety of the actions complained of by the Plaintiff. (Ex. 5)

64.     No use-of-force report was prepared by Wallace as required by D.C. Police Department.

65.     The custodial custody of Plaintiff by Wallace was not an investigative detention because no evidence that Wallace had reasonable suspicion to use force against Plaintiff or to handcuff her. (Exhibit 4).

66.     Officer Wallace put plaintiff's handcuffs on extremely tight and plaintiff told Wallace that the handcuffs were too tight.  (Ex. 1. pg. 61, 1-3).

67.     Officer Wallace was supposed to complete a Use of Force Report regarding this incident.  (Exhibit 7, pg. 116, Ln. 18, 117, 1-6).

68.     Officer Wallace told Ida Houser that the person who had the knife fled the scene before he arrived.  ( Exhibit 7, pg. 53, 7-12).

69.     If Officer Wallace feared for his safety he could have used another zone to reach communications when he allegedly encountered heavy traffic trying to call for backup.  ( Exhibit 7, pg. 62, 3-17).

70.     Officer Wallace never put in his sworn statement to the Civilian Complaints Review Board ("CCRB") that he feared for his safety, or that plaintiff had a weapon, or that he believed that plaintiff had a weapon and he never disclosed the fact that he handcuffed plaintiff. (Exhibit 9).

71.     Plaintiff filed a complaint against Officer Wallace.  (Exhibit 7, pg. 65 3-7)

72.     Officer Wallace was never disciplined for his actions related to this incident. (Exhibit 2, pg. 50 line 21-22, 51Line 1) .

73.     Sergeant Houser never investigated the allegations made by Officer Wallace, and she did not question any the witnesses.  (Exhibit 8, pg. 170. 8-21).

74.      The District of Columbia never investigated plaintiff's allegations that Officer Wallace handcuffed her.  (Exhibit 8, pgs. 227-231).

75.     Once Officer Wallace was no longer concerned about scene safety, it was improper for him to continue to detain plaintiff.  (Exhibit 8, Pg.  250, 2-6).

76.     Officer was no longer concerned about scene safety after the crowd dispersed. (Ex. 2 pg.  66, 16-18)

77.     Officer Wallace had no basis for ordering plaintiff to leave her apartment. (Exhibit 8, pg. 251, 6-13).

78.     Based Officer Wallace's sworn statement given to the Civilian Complaint's Review Board who investigated plaintiff's complaint, Officer Wallace had no basis to use force against plaintiff.  (Exhibit 8 pg. 219, 12-21).


Respectfully submitted,


By:     Donna Williams Rucker
        Donna Williams Rucker, 446713
        DuBoff  & Associates, Chartered
        METRO PLAZA ONE
        8401 Colesville Road, Suite 501
        Silver Spring, Maryland 20910
        (301) 495-3131     Office
        (301) 587-1872     Facsimile

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA
Civil Division**

| | | |
|---|---|---|
| **LATASHA M. COTTON,** | : | |
| | : | |
| **Plaintiff,** | : | |
| | : | **Case No.:1:05 CV0147(RU)** |
| **v.** | : | |
| | : | |
| **DISTRICT OF COLUMBIA** | : | |
| **GOVERNMENT, ET AL.** | : | |
| | : | |
| **Defendants,** | : | |

**PLAINTIFF'S EXHIBIT LIST**

1.    Deposition of Plaintiff, Latasha Cotton

2.    Deposition of Defendant Wallace

3.    Transcripts of Radio Tapes for calls made to 911/311 by the Plaintiff

4.    Robert Klotz Report

5.    Statement by Ida Houser to CCRB dated January 18, 2005.

6.    PD 251 Completed by Officer Wallace regarding this incident

7.    Deposition of Ida George Houser ( Vol. I) dated April 17, 2007

8.    Deposition Of Ida Houser (Vol. II) dated April 18, 2007

9.    Officer Wallace's Statement to The CCRB dated September 16, 2005