# Plaintiff's Opposition to Defendants' Motion for Summary Judgment

# Exhibit 8

# Deposition of Ida George Houser (Vol. II) Dated April 18, 2007

|     | 148 |
| --- | --- |
| 1 | UNITED STATES DISTRICT COURT |
| 2 | DISTRICT OF COLUMBIA |
| 3 | LATASHA M. COTTON,       : |
| 4 | Plaintiff,  : Civil Case No. |
| 5 | vs.       : 05-1047 (RU) |
| 6 | DISTRICT OF COLUMBIA,   : |
| 7 | et al,        : |
| 8 | Defendants.  : |
| 9 | - - - - - - - |
| 10 | VOLUME II |
| 11 | DEPOSITION of LT. IDA GEORGE HOUSER |
| 12 | Silver Spring, Maryland |
| 13 | Wednesday, April 18, 2007 |
| 14 | 11:53 A.M. |
| 15 |  |
| 16 |  |
| 17 |  |
| 18 | Job No: 1-101830 |
| 19 | Pages 148 - 267 |
| 20 | Reported by: Barbara A. Conner, R.P.R. |
| 21 |  |
| 22 |  |

149
1   Continued deposition of LT. IDA GEORGE
2  HOUSER, held at the offices of:
3
4      DUBOFF & ASSOCIATES, CHARTERED
5      8401 Colesville Road
6      Suite 501
7      Silver Spring, Maryland  20910
8      (301) 495-3131
9
10     Pursuant to Notice, before Barbara A. Conner,
11  Registered Professional Reporter and Notary Public of
12  the State of Maryland.

150
1         APPEARANCES
2
3  ON BEHALF OF THE PLAINTIFF:
4      DONNA W. RUCKER, ESQUIRE
5      DUBOFF & ASSOCIATES, CHARTERED
6      8401 Colesville Road
7      Suite 501
8      Silver Spring, Maryland  20910
9      (301) 495-3131
10
11
12  ON BEHALF OF THE DEFENDANTS:
13      DAVID JACKSON, ESQUIRE
14      OFFICE OF THE ATTORNEY GENERAL
15      FOR THE DISTRICT OF COLUMBIA
16      441 4th Street, Northwest
17      Suite 600 South
18      Washington, D.C.  20001
19      (202) 724-6618
20
21  ALSO PRESENT:
22      Latasha Cotton

151
1         PROCEEDINGS
2         LT. IDA GEORGE HOUSER,
3  having been duly sworn, testified as follows:
4         EXAMINATION BY COUNSEL FOR PLAINTIFF
5  BY MS. RUCKER:
6   Q   Lieutenant, this is a continuation of your
7  deposition from yesterday evening, correct?
8   A   Yes.
9   Q   And during that time you were sworn.  So,
10  we're going to just pick up from where we left off.
11  A   Yes.
12  Q   At the time that we concluded, I didn't get
13  the court reporter to give me the last question and so I
14  believe we were talking about in a little detail your
15  statement that had been provided to the Office of
16  Complaints Review and that's formerly OPC, correct?
17  Because I noticed in Answers to Interrogatories you
18  referred to an investigation by OPC.
19       MR. JACKSON:  Yes.
20  Q   I'm going to show you the statement that we
21  marked yesterday, which is deposition exhibit number 2.
22       And just for the record, we had marked

1 (Pages 148 to 151)

Page 168

1  A   Ms. Cotton was quite upset that the other
2  person was not -- her neighbor was not arrested.
3  Q   So, would that be a yes or no with respect to
4  my question, which is whether or not she was behaving
5  belligerently?
6  A   Yes.
7  Q   She was, okay.
8      And what is it about her behavior that caused
9  you to conclude that she was being belligerent?
10 A   **She was yelling and quite upset that the**
11 **other person had not been arrested.**
12 Q   So, besides the fact that she was yelling and
13 upset, was there anything else that you observed that
14 caused you to conclude that she was being belligerent?
15 A   **That was my conclusion.**
16 Q   Nothing else that you observed, then, is what
17 you're saying?
18 A   **No, ma'am.**
19 Q   And in my review of your statement, it also
20 indicates here that Ms. Cotton complained that Officer
21 Wallace had grabbed her. Do you see that on the second
22 page of your complaint?

Page 169

1  A   Yes.
2  Q   So, in addition to her indicating that she
3  was in a fight, she also complained to you that Officer
4  Wallace had grabbed her?
5  A   Yes.
6  Q   Did you investigate to determine why Officer
7  Wallace had grabbed her?
8  A   Yes.
9  Q   What did you find out from your personal
10 investigation?
11 A   **That she was trying to gain control of the**
12 **scene, so he grabbed her for his safety.**
13 Q   Did you question any witnesses about the
14 truth or veracity of that statement or did you simply
15 accept Officer Wallace's statement?
16 A   Yes.
17 Q   You did question someone?
18 A   No.
19 Q   So, I'm not sure. Let me ask the question
20 again.
21     Did you question anyone concerning the truth
22 or veracity of Officer Wallace's statement or did you

Page 170

1  just accept Officer Wallace's statement?
2  A   **It's a two prong question. Should I answer**
3  **yes to the first part or the second part?**
4  Q   Well, you've already answered that you
5  questioned him and he told you that it was for his
6  safety.
7  A   Yes.
8  Q   So, the question is, one, did you accept what
9  he stated or did you question any witnesses to determine
10 the truth or veracity of his statement?
11 A   Yes.
12 Q   Yes what?
13 A   **Yes, I accepted what he stated.**
14 Q   So, the answer, then, is, no, that you didn't
15 question any witnesses to determine the truth or
16 veracity of his statement?
17     MR. JACKSON: Objection, leading.
18 Q   Did you question any witnesses concerning the
19 truth or veracity of Officer Wallace's statement to you
20 that his safety required him to grab Latasha Cotton?
21 A   No.
22 Q   In looking at your statement, it also said

Page 171

1  that Ms. Cotton complained about a, you have, scratch on
2  her hand and she showed you a small surface scratch, but
3  the wound was not bleeding, you said. Do you recall
4  that?
5  A   Yes.
6  Q   Did she also complain about that to you?
7  A   Yes.
8  Q   What do you know about what she said about
9  that?
10 A   **What do I know about what she said about**
11 **that?**
12 Q   Tell me what she said about the fact that she
13 had this scratch to her hand.
14 A   **She had a scratch to her hand.**
15 Q   Did you, as the supervising officer present,
16 ask her how it happened?
17 A   **Give me a second to read my statement.**
18 Q   Sure.
19 A   **Okay. What was the question again?**
20     MS. RUCKER: Read it back.
21     (The last question was read.)
22 A   Yes.

216
1  Q  That's why I'm asking you as a representative
2  of the District, based on the investigation, what the
3  District may have done, the question, because I
4  understand you were not there physically or personally.
5  So, most of what you've been testifying to and even your
6  statement is based on secondhand knowledge, correct?
7  A  Yes.
8  Q  But what I'm asking you is, in the same light
9  that you've been giving testimony throughout, what is
10  the District's understanding as to whether or not
11  Officer Wallace had any basis for using force against
12  Ms. Cotton?
13  A  Well -- well, with the large crowd, the two
14  women fighting and one possibly with a knife.
15  Q  That would be the basis of Officer Wallace
16  using force against Ms. Cotton?
17  A  If he had to protect himself.
18  Q  Is there anything in your statement or
19  anything that you've read that gives you an indication
20  that he had to protect himself?
21  A  For actual physical threat, yes.
22  Q  You said what?

217
1  A  A threat.
2  Q  You said there was an actual physical threat?
3  A  Yes.
4  Q  Show me where in your statement you say there
5  was an actual physical threat?
6  A  If he believed that there was an actual
7  physical threat by Ms. Cotton holding a knife.
8  Q  Okay, but that's conjecture. You don't have
9  any indication that he believed it, is what I'm saying.
10  A  Correct.
11  Q  Is that correct, you don't?
12  A  No, I can't testify what he believed or what
13  he didn't believe, you're right.
14  Q  Let me show you what we'll mark as deposition
15  exhibit number 8.
16      (Statement of Officer David Wallace was
17  marked Exhibit 8 for identification.)
18      MS. RUCKER: I'll ask you to review that,
19  counsel, and pass it to the witness.
20      Can we go off the record for one second.
21      (A discussion was held off the record.)
22  Q  Can you identify that for the record.

218
1  A  It's an officer's statement, witness
2  statement.
3  Q  It's what?
4  A  It's a witness statement.
5  Q  By whom?
6  A  It's an officer complainant witness statement
7  by Officer David Wallace.
8  Q  What is the date of the statement that was
9  given in box eight on the first page?
10  A  September 16, 2005.
11  Q  So, this is probably about, what, eight
12  months after your statement was given to CCRB?
13  A  Probably. Yes, probably.
14  Q  Do you see anywhere in Officer Wallace's
15  statement where he indicates that he was in fear for his
16  safety?
17  A  Okay.
18  Q  Do you see anywhere in there where Officer
19  Wallace states any fear for his safety?
20  A  No.
21  Q  Do you see anywhere in Officer Wallace's
22  statement where he says that he threw Ms. Cotton, the

219
1  plaintiff, up against a car?
2  A  No.
3  Q  Do you see anywhere in Officer Wallace's
4  statement where he states that he placed Ms. Cotton in
5  handcuffs?
6  A  No.
7  Q  Did you see anywhere in Officer Wallace's
8  statement where he claims that Ms. Cotton had a knife?
9  A  No.
10  Q  I'll take that from you.
11  A  (Handing.)
12  Q  Based on Officer Wallace's statement to the
13  Office of Police Complaints, what is the District's
14  position as to whether or not he had any basis to use
15  force against Latasha Cotton?
16  A  May I read the statement again?
17  Q  Absolutely.
18      MS. RUCKER: Let the record reflect she's
19  reviewing again Officer Wallace's statement. It's
20  exhibit 8.
21  A  According to the statement, none.
22  Q  Do you see in Officer Wallace's statement,

224
1 interpretation, according to my statement and his.
2  Q  Well, the record will reflect what I asked
3 you, but I can ask you again. I said, if, in fact, he
4 says, "I did not touch anyone in the crowd," then if he,
5 in fact, grabbed Latasha Cotton, wouldn't that statement
6 be untrue?
7  A  No.
8  Q  That is what I started with. And as a result
9 of that, you started to surmise that he didn't consider
10 her to be part of the crowd. Is there anything in
11 Officer Wallace's statement that tells you that Latasha
12 Cotton was not a part of the crowd?
13  A  Yes. It says, "I do not recall asking anyone
14 in the crowd why the crowd had formed," and then it goes
15 on to say, "I do not recall the complaint, Latasha
16 Cotton. I do not recall if Ms. Cotton approached me."
17  Q  Well, I'm not asking you any questions about
18 that. My question is specifically with respect to the
19 statement that says, "I never touched anyone in the
20 crowd," and what you were reading that for was to tell
21 me whether or not Officer Wallace indicates that Latasha
22 Cotton was not a part of the crowd. Do you need to read

225
1 it again?
2  A  There's no indication.
3  Q  The fact that Officer Wallace's statement
4 does not indicate that he placed Latasha Cotton in
5 handcuffs, as a supervisor and official within the
6 Metropolitan Police Department, do you believe that that
7 is a critical piece of information that is missing from
8 his statement?
9  A  No.
10  Q  Do you still hold that position if I put it
11 to you that the statement is being taken in terms of a
12 complaint that Latasha Cotton has made about him using
13 force against her, do you believe that the fact that
14 Officer Wallace has failed to indicate that he placed
15 Latasha Cotton in handcuffs, in response to a complaint
16 where she's alleging the use of excessive force, do you
17 find that to be a critical deficiency?
18  A  No.
19  Q  And tell me why.
20  A  Because it was his recollection at the time
21 the statement was taken.
22  Q  Oh, I understand that we're talking about

226
1 what he recollected, but doesn't it concern you that you
2 are learning that there was handcuffing involved that he
3 did not put in his statement?
4  A  No.
5  Q  And based upon the fact that it is now
6 learned that Officer Wallace had, in fact, handcuffed
7 the complainant, does that change the District's
8 position about any conclusion that was reached by the
9 Office of Complaints Review --
10  A  No.
11  Q  -- let me finish the sentence -- concerning
12 the use of force?
13   Is that no? When I add that "concerning the
14 use of force," is it still no?
15  A  I think the outcome would still be the same.
16  Q  But my question is, do you consider that to
17 be a critical piece of information that is not a part of
18 this investigation, the fact that Officer Wallace did,
19 in fact, place Ms. Cotton in handcuffs? And I'm just
20 simply going by what policies and procedure the District
21 of Columbia would mandate that you follow as a
22 supervisor and an officer.

227
1  A  I have not read the whole investigation to
2 answer that question.
3  Q  Well, let me ask you as a lieutenant with the
4 Metropolitan Police Department and as a supervisor.
5 Wouldn't the fact that an officer neglected to put in a
6 statement, which is in response to a complaint by a
7 citizen that she had been the subject of excessive
8 force, that he, in fact, had handcuffed her, would that
9 be an issue to you?
10  A  Yes.
11  Q  Why would that be an issue?
12  A  Because I would want to know all the details
13 of the incident.
14  Q  Would it be an issue because that is a
15 critical piece of information that is needed to be able
16 to adequately and accurately investigate the matter?
17  A  That may be.
18  Q  Outside of conjecture, is it, is what I'm
19 asking, and this is, again, according to DC policies and
20 procedures.
21  A  We would like to know that information, that
22 is correct.

228
1  Q   Would you need to know it in order to be able
2  to adequately and accurately investigate the case?
3  A   **We would need to know as much as we can about**
4  **the case.**
5  Q   That part I got, but would you need to know
6  that she was placed in handcuffs, is the question.
7  A   **We would need to know as much as we can to**
8  **adequately come to a conclusion.**
9  Q   So, then, the answer is, yes, that it would
10 include needing to know that she was placed in
11 handcuffs, correct?
12 A   **All details, yes.**
13 Q   What happens to an officer who neglects to do
14 that, to give you a critical piece of information for an
15 investigation?
16 A   **We investigate on why.**
17 Q   Was that done in this case?
18 A   **I don't have the investigation in front of**
19 **me, the entire investigation, nor have I read the entire**
20 **investigation to tell you what the outcome was or**
21 **whether --**
22 Q   I know, but you're supposed to be here today

229
1  in order to do that. That's what Ms. Cotton is paying
2  for this deposition for, to learn that information.
3  A   **Okay.**
4  Q   That's what we asked for, someone to be
5  produced who can tell us the results of an
6  investigation. So, my question to you is, was there any
7  action taken against Officer Wallace because he failed
8  to disclose that he had handcuffed Latasha Cotton?
9  A   **And my answer remains the same, I still do**
10 **not have -- I have not read the entire investigation to**
11 **tell you the outcome of the investigation.**
12      MS. RUCKER: Then I will note for the record
13 that the District of Columbia has failed to tender a
14 witness who can produce information based on any
15 investigation that was conducted by the District
16 concerning the allegations made by Latasha Cotton, and
17 would add that to the information that we need, outside
18 of the numbers that were provided by this witness in the
19 beginning of the deposition.
20      MR. JACKSON: I'm sorry, what numbers?
21      MS. RUCKER: She gave us specific numbers on
22 the Notice of Deposition that she felt she was not

230
1  prepared to discuss, so I'm adding her failure to have
2  any information about additional investigations, because
3  what we need today is, Ms. Cotton has the right to know
4  what the District knows about any investigations it's
5  conducting. So, if this witness is not able to say all
6  that we have been provided is all there is, then I need
7  a witness who can come forward and say that. What she's
8  indicated is, she has no idea of whether there's
9  anything else.
10      MR. JACKSON: That's fine. I'll just object
11 to that because I believe she testified to that last
12 night.
13      MS. RUCKER: That's fine. If you want to
14 stipulate to what her testimony was, counsel, you can do
15 that. I don't have a problem with that. Can you tell
16 me what you believe she said?
17      MR. JACKSON: Yes. I believe that she said
18 as far as she understands, the Office of Police
19 Complaints was the only investigation that was done by
20 the District.
21      MS. RUCKER: Concerning Latasha Cotton's
22 complaint?

231
1       MR. JACKSON: That's correct.
2       MS. RUCKER: Then I'm fine.
3       MR. JACKSON: Excluding Ms. Robertson.
4       MS. RUCKER: That's fine. And then with that
5  information, then I'm fine.
6       MR. JACKSON: Okay.
7       MS. RUCKER: Because what she raised is that
8  she would need to see the other investigation that was
9  done, which made me think there was something else, and
10 if the Office of Police Complaints is it, if that's it,
11 then that's fine, we can move on.
12      MR. JACKSON: Then I understand, but, no,
13 there's no other investigation.
14      MS. RUCKER: Okay. Then that's fine. I
15 appreciate that clarification.
16 Q   Now, you were one of the officers who arrived
17 on the scene, correct? And I just want to state, for
18 the record, this question is pertinent and I think I
19 already know your position. It is important for me and
20 for Ms. Cotton to be able to ascertain information
21 pertaining to the officers who arrived at the scene. I
22 think I've asked you whether Officer Wallace had ever

Page 248

1 was your testimony?
2  A  No, you're asking me -- we're going around
3 and around about her detention and her being a victim
4 and I'm telling you I can't answer that question.
5  Q  You just said that you determined he detained
6 her for sufficient period of time based upon the scene
7 safety. That's what you just stated.
8  A  Depending on the circumstance, yes.
9  Q  What is it about what occurred that caused
10 you to know that he did, in fact, only detain her long
11 enough for scene safety? You just refuse to look at the
12 circumstances to answer a question about whether or not
13 a detention would have been appropriate after he learned
14 she was a victim, but you then turn around and say,
15 based upon the scenario, his detention was proper.
16  A  My answer still remains the same, it depends
17 on the circumstances that he would have perceived.
18  Q  You said it would depend on the
19 circumstances?
20  A  Of her safety, of his safety after learning
21 she was a victim.
22  Q  So, let's just answer this. After he learned

Page 249

1 that she was a victim, you're telling me he would have
2 to look at other circumstances to determine whether he
3 was going to keep her in custody?
4  A  Yes. You have to look at all of the
5 circumstances, whether someone was trying to harm her,
6 whether we need -- I don't know. You're asking me to
7 speculate; I can't answer that.
8  Q  I'm asking you the same facts that you used
9 to conclude that Officer Wallace acted properly. I'm
10 asking you to use those very same facts to determine
11 whether or not a detention would have been proper after
12 he learned that the plaintiff was a victim.
13  A  My answer still remains the same.
14  Q  What facts do you have that you are relying
15 on, as you sit here today, to testify that his detention
16 of her was reasonable, he had reasonable suspicion to
17 detain?
18  A  The statements and my on-scene investigation.
19  Q  If Officer Wallace concluded that Latasha
20 Cotton was not a victim, but was, in fact, a suspect and
21 there was no concern for scene safety, would he have
22 been justified in continuing to detain her?

Page 250

1  A  If she was a suspect.
2  Q  If he determined that she was not a suspect,
3 but, in fact, a victim and there was no concern for
4 scene safety, would he have been justified in continuing
5 to detain her?
6  A  If there's no concern for scene safety, no.
7  Q  I think you may have answered this in the
8 earlier deposition, but I want to know. Do you remember
9 where Officer Wallace was when you first came to the
10 scene?
11      MR. JACKSON: Objection, asked and answered.
12  A  I don't.
13  Q  Do you recall seeing an abandoned building
14 that's off, just off away from the building where this
15 incident is alleged to occur? Are you familiar with
16 that area?
17  A  I don't recall.
18  Q  Was the plaintiff free to leave at any time
19 after you arrived on the scene?
20  A  I don't recall.
21  Q  Did Officer Wallace, based on the same facts
22 that we've been talking about and your statement, have

Page 251

1 any basis to order Ms. Cotton to leave her apartment?
2  A  Order her to leave her apartment. Prior to
3 the fire board getting on the scene?
4  Q  I'm sorry?
5  A  Prior to the fire board getting on the scene?
6  Q  Well, that's not my question. My question
7 is, did he have any basis for ordering the plaintiff to
8 leave her apartment? That's the question I'm posing.
9  A  I understand. I'm trying to revisit my
10 statement in what happened on the scene.
11      Did he have any reason for -- no.
12  Q  For ordering her to leave her apartment.
13  A  No.
14  Q  I think I've asked you this, but do you know
15 whether Officer Wallace called Child Protective Services
16 while he was on the scene?
17  A  I don't recall.
18  Q  Now, if Officer Wallace believed that the
19 plaintiff's children were in danger or being neglected,
20 isn't he required to call protective services?
21  A  Yes.
22  Q  Did you at any point ever see Ms. Cotton's