### UNITED STATES DISTRICT COURT
### FOR THE DISTRICT OF COLUMBIA

LATASHA COTTON,           :
                           :

        Plaintiff,        :     Civil Action No.:    05-1047 (RMU)
                           :

        v.            :     Document No.:    25
                           :

DISTRICT OF COLUMBIA *et al.*,    :
                           :

        Defendants.    :

### MEMORANDUM OPINION

#### GRANTING IN PART AND DENYING IN PART THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT; GRANTING THE DEFENDANTS' MOTION TO DISMISS; DISMISSING THE PLAINTIFF'S 42 U.S.C. § 1981, 1985 AND 1986 CLAIMS (COUNT II)

### I. INTRODUCTION

The plaintiff brings this action charging the defendants with a host of constitutional and common law violations arising out of an incident between her and defendant Metropolitan Police Department ("MPD") Officer David C. Wallace. Subsequent to an altercation between the plaintiff and her neighbor, Wallace allegedly used excessive force to subdue and detain the plaintiff without legal basis, causing her physical injuries and severe emotional distress. The plaintiff sues Wallace, a number of his supervisors and the District of Columbia ("D.C." or "the District"). The case is presently before the court on the defendants' motion for summary

judgment on the plaintiff's claims.[1]  Because the court concludes that no constitutional violation

occurred, it grants the defendants' motion as to Counts I and III.  Because it concludes that the

plaintiff cannot prove that the defendant used excessive force, it grants the defendants' motion as

to Count IV.  Because no reasonable jury could conclude that the plaintiff has proven her

negligent supervision and *respondeat superior* claim, the court grants the defendants' motion as

to Count VII.  Because it concludes that genuine issues remain as to material facts concerning

Wallace's encounter with the plaintiff, it denies the defendants' motion as to Count VI.  Because

the plaintiff has not pled a prima facie case for Counts V and IX, the court grants the defendants'

motion to dismiss those claims.  Because the plaintiff consents to the dismissal of Count II, the

court dismisses it.

## II.    BACKGROUND

### A.    Factual History

The plaintiff alleges that on the evening of June 7, 2004, she and her neighbor engaged in

a verbal altercation while outside the plaintiff's apartment building in Northeast Washington,

D.C.  Compl. ¶¶ 6-8.  The neighbor allegedly brandished a knife and threatened the plaintiff.  *Id.*

---

[1]     The defendants style their motion as one for summary judgment, but in the text of their motion
they curiously and repeatedly request that the court dismiss the plaintiff's claims.  Because the
defendants invoke the legal standard for summary judgment as to most of the claims, and because
they ask the court to review materials outside the pleadings, the court concludes that despite their
repeated requests for dismissal, the defendants intend their motion to be one for summary
judgment.  *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (stating that if in
considering a Rule 12(b)(6) motion, "matters outside the pleading are presented to and not
excluded by the court, the motion shall be treated as one for summary judgment and disposed of
as provided in Rule 56").  But because the court does not look outside the pleadings in
addressing Counts V and XI, it construes that portion of the defendants' motion as one for
dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6).

¶ 6. Shortly thereafter, Officer Wallace arrived on the scene, and the neighbor returned to her residence inside the plaintiff's apartment building. *Id.* ¶¶ 7-8. Upon Wallace's arrival, several bystanders informed him of the altercation between the plaintiff and her neighbor and that the woman with the knife (the plaintiff's neighbor) was inside the apartment building. *Id.* ¶ 9. The plaintiff alleges that Wallace, without provocation, approached her and "pushed the back of her head forward, violently forcing her body forward, thereby tripping [her] and causing her to fall face first, hard to the ground," resulting in physical injuries. *Id.* ¶ 11. Then, allegedly without probable cause or reasonable suspicion, Wallace handcuffed the plaintiff and yanked her to her feet by pulling on the handcuffs. *Id.* ¶ 14.

Although the plaintiff asserts that she and several bystanders told Wallace about the confrontation with her neighbor, he failed to investigate the plaintiff's statement that the neighbor had threatened her with a knife. *Id.* ¶¶ 15, 17. Instead, Wallace led the handcuffed plaintiff to a nearby abandoned building and threatened to arrest her and turn her children over to Child Protective Services if she did not immediately leave the area. *Id.* ¶ 18. The plaintiff remained compliant but was quite upset by the events. *Id*. ¶¶ 21, 38. The plaintiff's sister arrived, informed Wallace that the plaintiff suffered from anxiety and requested her release. *Id*. ¶ 19. Wallace then released the plaintiff on the condition that she return home, collect her clothes and leave her residence with her children. *Id.* ¶ 22. Wallace waited in his patrol car for the plaintiff and her children to leave the area. *Id.* ¶ 23.

The plaintiff filed a report with the MPD against Wallace, asserting that his actions violated D.C. Code § 5-123.02. *Id*. ¶¶ 67. Two supervisory officials from the MPD contacted

the plaintiff on the same day as the incident to address the filed report, but she claims that the MPD undertook no formal investigation. *Id*. ¶¶ 67, 70.

The defendants take issue with several of the plaintiff's allegations. The defendants contend the following facts that contradict those presented by the plaintiff: Wallace approached the scene to find 40-50 people fighting in the street, Defs.' Statement of Material Facts ("Defs.' Statement") ¶ 13; Wallace was unable to obtain back up, *id*. ¶ 14; Wallace feared for his safety, *id*. ¶ 15; the crowd informed Wallace that a woman present had a knife without identifying which woman it was, *id*. ¶ 18; and Wallace did not cause the plaintiff to fall to the ground, *id*. ¶¶ 19-21;

## B.    Procedural History

The plaintiff filed suit in this court on May 25, 2005, bringing a mixed bag of claims including constitutional and civil rights violations, false arrest, false imprisonment, assault, battery and negligence. Compl. ¶ 1. On July 20, 2005, defendant MPD Chief Charles Ramsey moved to dismiss the complaint against him arguing that because he is only named in his official capacity, the proper defendant in this action is D.C. Def.'s Mot. to Dismiss ("Def.'s Mot.") at 2. On March 16, 2006, the court granted that motion.

On May 31, 2007, the remaining defendants filed a motion for summary judgment, arguing for various reasons that they are entitled to judgment as a matter of law on all the plaintiff's claims. The plaintiff vigorously opposes the motion as to all the counts except Count II, the dismissal of which she concedes is appropriate. Pl.'s Opp'n at 2. The court accordingly dismisses Count II and considers the parties' remaining legal arguments below.

### III.    ANALYSIS

### A.    Summary Judgment

### 1.    Legal Standard for a Motion for Summary Judgment

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Diamond v. Atwood*, 43 F.3d 1538, 1540 (D.C. Cir. 1995). To determine which facts are "material," a court must look to the substantive law on which each claim rests. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A "genuine issue" is one whose resolution could establish an element of a claim or defense and, therefore, affect the outcome of the action. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 248.

In ruling on a motion for summary judgment, the court must draw all justifiable inferences in the nonmoving party's favor and accept the nonmoving party's evidence as true. *Anderson*, 477 U.S. at 255. A nonmoving party, however, must establish more than "the mere existence of a scintilla of evidence" in support of its position. *Id.* at 252. To prevail on a motion for summary judgment, the moving party must show that the nonmoving party "fail[ed] to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. By pointing to the absence of evidence proffered by the nonmoving party, a moving party may succeed on summary judgment. *Id.*

The nonmoving party may defeat summary judgment through factual representations made in a sworn affidavit if he "support[s] his allegations . . . with facts in the record," *Greene v. Dalton*, 164 F.3d 671, 675 (D.C. Cir. 1999) (quoting *Harding v. Gray*, 9 F.3d 150, 154 (D.C. Cir. 1993)), or provides "direct testimonial evidence," *Arrington v. United States*, 473 F.3d 329, 338 (D.C. Cir. 2006).  Indeed, for the court to accept anything less "would defeat the central purpose of the summary judgment device, which is to weed out those cases insufficiently meritorious to warrant the expense of a jury trial." *Greene*, 164 F.3d at 675.

**2.     The Court Grants the Defendants' Motion as to the Plaintiff's § 1983 Claims**

The plaintiff alleges that Wallace violated 42 U.S.C. § 1983 by depriving her of her Fourth Amendment rights against false imprisonment and false arrest and by using excessive force in doing so.  Compl. ¶¶ 25-26.  The defendants move for summary judgment on the grounds that Wallace is entitled to qualified immunity for his actions and that Wallace did not violate any of the plaintiff's constitutional rights.  Defs.' Mot. at 7-12.  Even if he did violate a constitutional right, the defendants argue that Wallace is still entitled to qualified immunity because no reasonable officer in the same situation would have believed that his conduct was in violation of the plaintiff's rights.  *Id*. at 12.  The court concludes that no constitutional violation occurred, and so it grants the defendants' motion for summary judgment on the grounds of qualified immunity as to the plaintiff's § 1983 claim.

**a.     Legal Standard for a Qualified Immunity Defense**

42 U.S.C. § 1983 creates a cause of action against any person who, acting under the color of state law, abridges rights guaranteed by the Constitution or the laws of the United States.  *Polk v. District of Columbia*, 121 F. Supp. 2d 56, 61 (D.D.C. 2000); *Abramson v. Bennett*, 707 F.

6

Supp. 13, 16 (D.D.C. 1989). State officials may be entitled to a defense of qualified immunity, however. *See Wilson v. Layne*, 526 U.S. 603, 609 (1999). Qualified immunity "shield[s officials] from liability for civil damages insofar as [the official's] conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Id.* at 614 (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). It "provides not simply a defense to liability, but also an entitlement not to stand trial or face the other burdens of litigation." *Farmer v. Moritsugu*, 163 F.3d 610, 613 (D.C. Cir. 1998) (quoting *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985)).

In evaluating a § 1983 claim to which a defendant has raised the qualified immunity defense, the court must follow a two-pronged analysis. *Butera v. District of Columbia*, 235 F.3d 637, 646 (D.C. Cir. 2001) (citing *Wilson*, 526 U.S. at 609). First, as a threshold matter, the court must determine whether the plaintiff has alleged the deprivation of an actual constitutional right. *Id.*; *Saucier v. Katz*, 533 U.S. 194, 201 (2001). In defining an "actual constitutional right," a court must be careful to avoid defining the right in overly general terms "lest [it] strip the qualified immunity defense of all meaning." *Butera*, 235 F.3d at 646. Instead, the court must identify the right with the appropriate level of specificity so as to allow officials to reasonably anticipate when their conduct may give rise to liability for damages. *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 639 (1987)). Second, the court must decide whether the constitutional right was clearly established at the time of the defendant's action. *Id.* A right is "clearly established" if "the contours of that right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* (quoting *Wilson*, 526 U.S. at 614-15); *see Crawford-El v. Britton*, 523 U.S. 574, 591 (1998) (stating that "[i]f the law was clearly

7

established, the immunity defense ordinarily should fail, since a reasonably competent public

official should know the law governing his conduct"). Although the specific action in question

need not have been held unlawful by the courts, its unlawfulness in light of pre-existing law must

have been apparent to the defendant. *Butera*, 235 F.3d at 646 (quoting *Anderson*, 483 U.S. at

640). Whether the rights are clearly established is a pure question of law to be resolved by the

court. *Pitt v. District of Columbia*, 491 F.3d 494, 509 (D.C. Cir. 2007).

### b.    Fourth Amendment False Imprisonment and Arrest

The Fourth Amendment to the United States Constitution protects citizens from

unreasonable government interference with the right of privacy. U.S. CONST. amend. IV; *United*

*States v. Martinez-Fuerte*, 428 U.S. 543, 554 (1976). Specifically, the Fourth Amendment

guarantees citizens the right "to be secure in their person . . . against unreasonable searches and

seizures." U.S. CONST. amend. IV. "[I]n determining whether a detention has occurred within

the meaning of the Fourth Amendment, the Supreme Court has recognized three types of police-

citizen encounters; (1) a full-scale arrest, which must be supported by probable cause, (2) a brief

investigatory detention which must be supported by reasonable suspicion, and (3) a brief police-

citizen encounter, which requires no justification." *Polk*, 121 F. Supp. 2d at 64 (internal citations

omitted).

The plaintiff alleges that Wallace violated her constitutional rights by falsely arresting

and imprisoning her without probable cause. Compl. ¶ 26. The defendants assert to the contrary

that Wallace "briefly detained" the plaintiff to investigate whether and what crimes had been

committed. Defs.' Mot. at 10-11. According to the defendants, Wallace arrived to a see large

crowd of people and a fight, and the crowd at some point "shouted she has a knife." *Id*. at 11.

8

The defendants assert that the gestalt of the scene gave Wallace a "reasonable articulable suspicion that a crime had been or was about to be committed" and justified his stopping the plaintiff. *Id*.

Precisely what happened at the scene and the nature of the plaintiff's detention is heavily disputed. The plaintiff claims that bystanders informed Wallace that the plaintiff had been threatened, and the woman with the knife had run into the apartment building, Pl.'s Statement of Material Facts ("Pl.'s Statement") ¶ 12, not merely that an unnamed "she" was in possession of a knife, Defs.' Statement ¶ 18. The plaintiff then asserts that Wallace then forced her to the ground and placed her in handcuffs without cause or provocation. Pl.'s Statement ¶¶ 13, 18. The defendants, however, flatly deny that Wallace caused her to the fall to the ground, Defs.' Statement ¶ 20, but they do concede that Wallace placed the plaintiff in handcuffs for his own protection and for the protection of others and that she was handcuffed for approximately 20 minutes, Defs.' Mot. at 12.

Even taking the plaintiff's allegations as true, the court concludes that Wallace executed a *Terry* stop. A stop takes place "when the officer, by means of physical force or show of authority, has in some way restrained the liberty of a citizen," *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968), and when under the circumstances a reasonable person would have believed that she was not free to end the encounter and walk away, *U.S. v. Mendenhall*, 446 U.S. 544, 553 (1980). According to the plaintiff's facts, after the plaintiff's neighbor had threatened her with a knife not once but twice, Wallace arrived on the scene. Pl.'s Statement ¶¶ 3-4. Wallace then forced the plaintiff to the ground, handcuffed her and forcibly removed her to a nearby location. *Id*. ¶¶ 13-

21. A reasonable person, after having been forced to the ground and handcuffed by a police officer, would most certainly conclude that she was not free to leave the situation.

The next inquiry, then, is whether the *Terry* stop was legal. To justify a brief investigative *Terry* stop, a police officer needs only a "reasonable, articulable suspicion" of criminal conduct, *Illinios v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30), and "*Terry* stops require only that officers have a 'minimal level of objective justification,'" *U.S. v. Goddard*, 491 F.3d 457, 460 (D.C. Cir. 2007) (quoting *INS v. Delgado*, 466 U.S. 210, 217 (1984)). In this case, Wallace approached a crowd of people and was informed that an altercation between two women had taken place. Pl.'s Statement ¶¶ 5, 12. The crowd dispersed, and the neighbor with the knife went back into her apartment. *Id.* ¶¶ 9-11. Despite the fact that several bystanders advised Wallace that the plaintiff had been threatened by a person with a knife and that person had fled to her apartment, *id.* ¶ 12, Wallace was under no obligation to initially trust the word of bystanders as to whom was the instigator or who was or was not armed; this information is the proper subject of investigation. *Cf. United States v. Holmes*, 385 F.3d 786, 790 (D.C. Cir. 2004) (stating that "the Fourth Amendment does not require the officer to gamble his safety and that of those around him on the accuracy of [the statements of others]"). The court cannot, therefore, deem it unreasonable that Wallace would undertake to stop and investigate the remaining individual involved in an altercation that reportedly involved a weapon. *See Rogala v. District of Columbia*, 161 F.3d 44, 54 (D.C. Cir. 1998) (stating that a police officer has the power to reasonably control the situation by restricting an individual's movements, especially when the officer is alone or feels threatened); *United States v. Clark*, 337 F.3d 1282, 1287-88 (11th Cir.

2003) (upholding the detention of an unrelated bystander to an altercation between other persons)
(relying on *Rogala*, 161 F.3d 44).

In addition, the court cannot conclude that Wallace's forcing the plaintiff to the ground
was inherently impermissible during a *Terry* stop because "the right to make an arrest or
investigatory stop necessarily carries with it the right to use some degree of physical coercion or
threat thereof to effect it." *Graham v. Connor*, 490 U.S. 386, 396 (1989). Nor does Wallace's
use of handcuffs or relocation of the plaintiff change the court's conclusion. *U.S. v. Jones*, 973
F.2d 928 (D.C. Cir. 1992) *reh'g granted and opinion vacated in part on other grounds*, 973 F.2d
944 (D.C. Cir.1992) (explaining that a "*Terry* stop does not turn into a full arrest merely because
the officers use handcuffs and force the suspect to lie down to prevent flight, so long as the police
conduct is reasonable" and that a *Terry* stop "may also include forced relocation of the subject").
Finally, the court concludes that where an officer approached a group of people in some degree
of confusion, a 20-minute stop is not an excessive amount of time in which to conduct an
investigation.

Although in hindsight the plaintiff was, indeed, the victim of her neighbor and harbored
no weapon, "it is not for [the court] to judge the reasonableness of a particular use of force with
the benefit of 20/20 hindsight. Rather, [it is] to judge it from the perspective of a reasonable
officer on the scene." *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 486 (6th Cir.2007).
Accordingly, because it concludes that Wallace did not falsely imprison or arrest the plaintiff,
Wallace is entitled to qualified immunity.

### c.  Fourth Amendment Excessive Force

The plaintiff's excessive force claim arises out her allegations of Fourth Amendment violations discussed above. *Graham*, 490 U.S. at 394-95 (stating that when "the excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment" against unreasonable seizures). The plaintiff alleges that Wallace applied excessive force when he "clipped" her feet and forced her to the ground, causing a scarred knee, a scraped hand, and a breast to become swollen after she fell to the ground. Pl.'s Opp'n at 4. Her claim "turns on whether [Wallace's] conduct was reasonable under the circumstances confronting [him] at the time." *Fletcher v. District of Columbia*, 2005 WL 670676, at *3 (D.D.C. Mar. 22, 2005).

In determining whether Wallace's conduct was objectively reasonable, the court must balance the intrusion of the individual's Fourth Amendment interests with the governmental interests at stake. *Graham*, 490 U.S. at 396. This requires the court to scrutinize "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether [she] actively resist[ed] arrest or attempt[ed] to evade arrest by flight." *Saucier v. Katz*, 533 U.S. 194, 205 (2001) (quoting *Graham*, 490 U.S. at 396). The crime at hand was an individual being threatened at knife-point by another individual. Pl.'s Statement ¶¶ 2, 3, 12; Defs.' Statement ¶¶ 8, 11. As discussed above, Wallace had reasonable suspicion to stop and investigate the plaintiff as an individual involved in an altercation involving a knife. This crime is serious, indeed, and it is reasonable that Wallace felt that his own safety, the safety of others gathered, and even the safety of the initial attacker was at issue. Under these circumstances, then, it was reasonable for Wallace to subdue an individual who may be armed.

*See Tennessee v. Garner*, 471 U.S. 1, 12 (1985) (stating that an officer's use of force is acceptable if the officer had probable cause to believe that a person posed a threat of serious physical harm to the officer or to others). As stated above, the fact that the plaintiff was actually an unarmed victim does not render Wallace's use of force unreasonable. *Qutb v. Ramsey*, 285 F. Supp. 2d 33, 48 (D.D.C. 2003) (explaining that "[b]ecause it is not always clear where acceptable force crosses the line into excessive force, an officer who reasonably perceives that he is acting within the limits set by the Constitution may not be held liable if he turns out to be wrong). In light of the totality of the circumstances, the court cannot conclude that a reasonable officer in Wallace's shoes would have believed that forcing the plaintiff to the ground was in violation of her Fourth Amendment rights. *See Graham*, 490 U.S. at 396-97 (stating that "[t]he calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split second judgments – in circumstances that are tense, uncertain, and rapidly evolving – about the amount of force that is necessary in a particular situation"). Accordingly, the court concludes that Wallace is entitled to qualified immunity and grants the defendants' motion for summary judgment on Count I.

### 3.  The Court Grants the Defendants' Motion as to the Plaintiff's Common Law False Arrest and False Imprisonment Claims (Count III)

The defendants ask for summary judgment in their favor on the plaintiff's common law false arrest and imprisonment claim because she cannot establish that she was either arrested or imprisoned. Defs.' Mot. at 12. The defendants state that the plaintiff was only detained for the purpose of investigation, not arrested. *Id*. at 12-13. Therefore, as the plaintiff was not arrested, her false imprisonment and arrest claim must fail. *Id*. at 13. The plaintiff rejoins "that she was

placed in handcuffs, moved from the location of the incident and told to sit on the steps of an abandoned building." Pl.'s Opp'n at 15. All this without having assaulted or attempted to assault Wallace and without Wallace searching her for the knife he claims the crowd told him she harbored. *Id*. The court agrees with the defendants, based on its conclusions above.

For the plaintiff to succeed on her false arrest and false imprisonment claim under District of Columbia tort law, she must prove (1) that Wallace detained or restrained the plaintiff against her will within the boundaries fixed by Wallace, and (2) the unlawfulness of the restraint. *Edwards v. Okie Dokie, Inc*., 473 F. Supp. 2d 31, 44 (D.D.C. 2007) (citing *Koroma v. United States*, 628 F. Supp. 949, 952 (D.D.C. 1986)). The court's inquiry in a false arrest claim centers on "whether the officer was justified in arresting the plaintiff." *Rogala*, 161 F.3d at 57 (citing *District of Columbia v. Murphy*, 631 A.2d 34, 36 (D.C. 1993)). The court has already determined that the plaintiff was legally stopped for investigatory purposes. Thus, the plaintiff cannot substantiate her claims that she was falsely arrested or imprisoned, and the court grants the defendants' motion for summary judgment as to Count III.

### 4. The Court Denies the Defendants' Motion as to the Plaintiff's Intentional Infliction of Emotional Distress Claim (Count VI)

The plaintiff brings a claim of intentional infliction of emotional distress against Wallace. Compl. ¶¶ 52-56. The defendant asks the court to grant summary judgment on this claim because the plaintiff has failed to allege facts to support it. Defs.' Mot. at 18. The plaintiff argues that she has sufficiently proven this claim because Wallace's actions caused her "an extreme amount of emotional anguish, psychological distress, embarrassment and humiliation," Compl. ¶ 53, and that she "was obviously shocked, offended, scarred [sic] and in extreme fear

14

due to the actions of Defendant Wallace,"[2] Pl.'s Opp'n at 22. The plaintiff states that as a result of the encounter she "had an anxiety attack," and had "nightmares about him shooting [her] with his gun." Pl.'s Depo. at 109. Her doctor had to increase the doses of her anti-anxiety medication, and presently, when she's driving, she has to pull over when she sees a police car because of residual anxiety. *Id*. at 110.

To succeed on this claim, the plaintiff must show (1) that Wallace's conduct was extreme and outrageous and (2) either intentionally or recklessly (3) caused the plaintiff severe emotional distress. *McKnight v. District of Columbia*, 412 F. Supp. 2d 127, 137 (D.D.C. 2006) (citing *Larijani v. Georgetown Univ.*, 791 A.2d 41, 44 (D.C. 2002)). Wallace's conduct must have been "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Larijani*, 791 A.2d at 44 (quoting *Homan v. Goyal*, 711 A.2d 812, 818 (D.C. 1998)).

The court must scrutinize Wallace's actions to determine whether "the recitation of the facts to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" RESTATEMENT (Second) of Torts § 46. The court must "consider [Wallace's] actions within the context of the situation at hand." *Khan v. Parsons Global Servs. Ltd.*, 480 F. Supp. 2d 327, 342 (D.D.C. 2007).

---

[2]    In addition, the plaintiff states that Wallace's alleged threat to have her children taken by child protective services constituted "verbal threats against a women who is well known to experience anxiety attacks and not cope with extremely stressful situations." Pl.'s Opp'n at 22. The plaintiff's state of mind or susceptibility to stress or provocation is only a relevant consideration for intentional infliction of emotional distress if the actor is aware of it at the time. *Drejza v. Vaccaro*, 650 A.2d 1308, 1313 (D.C. 1994). The plaintiff presents no evidence, or even any suggestion, that Wallace was aware of her fragile mental state.

Even by the plaintiff's accounts, the scene was one of confusion. Wallace arrived to a crowd, which he had to disperse, after the events that transpired between the plaintiff and her neighbor, and Wallace had to rely on bystanders for information. Pl.'s Statement ¶¶ 5, 12. The court cannot conclude that a police officer's handcuffing a person in this circumstance, even if based on a mistaken assumption that she was a threat, "goes beyond all possible bounds of decency," is "atrocious, and utterly intolerable in a civilized community." *Larijani*, 791 A.2d at 44.

But, a police officer forcing a person to the ground after having been informed that she was not the individual with the knife, threatening her with jail, and threatening to have her children taken by child protective services could quite possibly lead an average member of the community to exclaim "Outrageous!" Because the parties dispute whether the crowd informed Wallace that the plaintiff had a knife, whether he forced her to the ground belongs to a jury, and whether he threatened to send her to jail and to send her children to Child Protective Services, the determination of whether Wallace's conduct was extreme or outrageous belongs to a jury. *Smith v. District of Columbia*, 882 A.2d 778, 794 (D.C. 2005). Accordingly, the court denies the defendants' motion for summary judgment as to this claim.

### 5. The Court Grants the Defendants' Motion as to the Plaintiff's Negligent Supervision, Respondeat Superior Claim (Count VII)

#### a. District of Columbia

The defendants move for summary judgment on the plaintiff's claim for negligent supervision because, although the plaintiff has produced expert testimony, that expert has not set forth a standard of care relative to police training as required by Rule 26(a)(2)(B). Defs.' Mot. at

19. They conclude that because the plaintiff's expert fails to set forth the required evidence, the plaintiff cannot establish her claim for negligence. Rather than arguing that she has produced sufficient evidence to support this claim, the plaintiff merely argues that the defendants have not produced an expert to rebut any testimony that her expert may provide. Pl.'s Opp'n at 23. She summarily concludes that she "will present evidence from which a reasonable jury can conclude that defendant District of Columbia was negligent."[3]  *Id*.

The plaintiff need not produce expert testimony as to the relevant standard of care when that standard is "within the realm of common knowledge and everyday experience." *District of Columbia v. White*, 442 A.2d 159, 164 (D.C. 1982) (quoting *Matthews v. District of Columbia*, 387 A.2 731, 734-35 (D.C. 1978)). But, when "the subject matter is so distinctly related to some science, profession, or occupation as to be beyond the ken of the average layperson," expert testimony is necessary. *Robinson v. District of Columbia*, 2006 WL 2714913, at *8 (D.D.C. Sept. 22, 2006) (internal quotations omitted). "Expert testimony generally is necessary on claims of negligent training and supervision of police officers." *Id*. Absent expert testimony on the standard of care relative to police training, the plaintiff cannot succeed on her claims because no jury could conclude that the District was negligent in training Wallace.

The plaintiff also argues that the District of Columba is liable to the plaintiff under the theory of *respondeat superior*. Compl. ¶ 72. The plaintiff argues that Wallace represented

---

[3]    The court cannot rely on the plaintiff's promise to, at some future date unknown, produce evidence that will prove defendant District of Columbia liable for negligent supervision and respondeat superior. Discovery has closed, and the court is now reviewing the merits of the case to determine which claims are legally sound. Now is the time that such evidence is required, and its absence is fatal to portions of the plaintiff's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

official policy or custom when he acted in violation of her constitutional rights.  Pl.'s Opp'n at 25-26.  But, as the court concludes above, the plaintiff has failed to establish that her constitutional rights were violated.  *Burnett v. Sharma*, 511 F. Supp. 2d 136, 141 (D.D.C. 2007) (stating that "[t]he District of Columbia . . . may be subject to liability under § 1983 only 'when an official policy or custom causes the complainant to suffer a deprivation of a constitutional right'") (quoting *Carter v. District of Columbia*, 795 F.2d 116, 122 (D.C. Cir. 1986)).  Neither could the plaintiff's *respondeat superior* claims against the District survive based on her tort allegations because "a municipality cannot be held liable *solely* because it employs a tortfeasor." *Monell v. Dept. of Social Servs. of City of New York*, 436 U.S. 658, 691 (1978).  Accordingly, the court grants the defendants' motion as to these claims against the District.

### b.    Supervisors

The defendant also asks the court for summary judgment as to the plaintiff's negligent supervision claims against John Doe Supervisors #1 and #2 for Wallace's failure to fill out reports of the incident with the plaintiff, and for their failure to investigate the plaintiff's administrative complaint against Wallace, all in violation of MPD policies and regulations. Compl. ¶¶ 64-70.  Although the supervisors' non-compliance with MPD policies may provide some evidence of negligence, it cannot establish negligence absent a showing that the non-compliance with policy was also non-compliance with a duty of care.  *Banks v. Bank of Am.*, 505 F. Supp. 2d 159, 163-64 (concluding that the plaintiff's allegations that a business failed to comply with its policies was insufficient in itself to establish a duty of care).  Here again, the plaintiff has failed to establish a requisite element of a negligence claim, that is, the duty of care owed by the above-mentioned defendants to the plaintiff.  *White*, 442 A.2d at 164.

18

**6.    The Court Grants the Defendants' Motion as to the Plaintiff's Assault and Battery Claim (Count IV)**

The plaintiff alleges that Wallace assaulted and battered her when he "grabbed [the] plaintiff and tripped [the] plaintiff to the ground, placed her in handcuffs, pulled the plaintiff to her feet by pulling on the handcuffs and forced her to move against her will to a vacant building." Compl. ¶ 41.  The defendants argue that the court should grant them summary judgment on this claim because "[a] police officer is privileged to use reasonable force in carrying out his official duties," and because Wallace did not use more force than was reasonable.  Defs.' Mot. at 13. The court agrees.

The D.C. Court of Appeals has utilized the standard for excessive force under § 1983, as articulated in *Graham v. Connor* to "inform[] the privileged use of force analysis for assault and battery claims under District of Columbia common law."  *Mazloum v. D.C. Metro. Police Dept.*, 522 F. Supp. 2d 24, 43 (D.D.C. 2007) (citing *Etheridge v. District of Columbia*, 635 A.2d 908, 916 (D.C. 1993)).  Because the court has concluded that as a constitutional matter Wallace did not use excessive force, the investigatory stop of the plaintiff by Wallace was legal.  Therefore, the court concludes that the plaintiff cannot show that Wallace used more than reasonable force for the purposes of common law assault and battery and overcome Wallace's privilege.  The court, therefore, grants the defendants' motion for summary judgment as to this claim.

## B.    Motion to Dismiss

### 1.    Legal Standard for Rule 12(b)(6) Motion to Dismiss

A Rule 12(b)(6) motion to dismiss tests the legal sufficiency of a complaint.  *Browning v. Clinton*, 292 F.3d 235, 242 (D.C. Cir. 2002).  The complaint need only set forth a short and plain

statement of the claim, giving the defendant fair notice of the claim and the grounds upon which it rests. *Kingman Park Civic Ass'n v. Williams*, 348 F.3d 1033, 1040 (D.C. Cir. 2003) (citing FED. R. CIV. P. 8(a)(2) and *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). "Such simplified notice pleading is made possible by the liberal opportunity for discovery and the other pre-trial procedures established by the Rules to disclose more precisely the basis of both claim and defense to define more narrowly the disputed facts and issues." *Conley*, 355 U.S. at 47-48 (internal quotation marks omitted). It is not necessary for the plaintiff to plead all elements of his prima facie case in the complaint, *Swierkiewicz v. Sonoma N.A.*, 534 U.S. 506, 511-14 (2002), or "plead law or match facts to every element of a legal theory," *Krieger v. Fadely*, 211 F.3d 134, 136 (D.C. Cir. 2000) (internal quotation marks and citation omitted).

Yet, the plaintiff must allege a "plausible entitlement to relief," by setting forth "any set of facts consistent with the allegations." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1967, 1969 (2007) (abrogating the oft-quoted language from *Conley*, 355 U.S. at 45-56, instructing courts not to dismiss for failure to state a claim unless it appears beyond doubt that "no set of facts in support of his claim [] would entitle him to relief"). While these facts must "possess enough heft to 'sho[w] that the pleader is entitled to relief,'" a complaint "does not need detailed factual allegations." *Id.* at 1964, 1966. In resolving a Rule 12(b)(6) motion, the court must treat the complaint's factual allegations – including mixed questions of law and fact – as true and draw all reasonable inferences therefrom in the plaintiff's favor. *Macharia v. United States*, 334 F.3d 61, 64, 67 (D.C. Cir. 2003); *Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003); *Browning*, 292 F.3d at 242. While many well-pleaded complaints are conclusory, the court need not accept as true inferences unsupported by facts set out in the

20

complaint or legal conclusions cast as factual allegations. *Warren v. District of Columbia*, 353

F.3d 36, 40 (D.C. Cir. 2004); *Browning*, 292 F.3d at 242.

### 2.    The Court Grants the Defendants' Motion to Dismiss the Plaintiff's Negligent Infliction of Emotional Distress (Count V) and Negligence (Count IX) Claims

The defendants move to dismiss both the plaintiff's negligent infliction of emotional

distress and negligence claims because the plaintiff's allegations can only be characterized as

intentional torts and the plaintiff has failed to state a claim for negligence. Defs.' Mot. at 14.

The plaintiff protests, without really responding, that she has alleged facts that can be

characterized as negligence. Pl.'s Opp'n at 18. The court agrees with the defendant.

"[W]hen a negligence claim involves use of excessive force by a police officer, the

'negligence must be distinctly pled and based upon at least one factual scenario that presents an

aspect of negligence apart from the use of excessive force itself and violative of a distinct

standard of care." *Taffler v. District of Columbia*, 2006 WL 3254491, at *9 (D.D.C. Nov. 8,

2006) (quoting *District of Columbia v. Chinn*, 839 A.2d 701, 705, 711 (D.C. 2003)). The

allegations contained in the plaintiff's negligent infliction of emotional distress claims are

identical to those supporting her claim of intentional infliction of emotional distress. She argues

that Wallace acted with extreme and outrageous conduct by, *inter alia*, forcibly arresting, falsely

imprisoning the plaintiff and using excessive force. Compl. ¶ 49. She then concludes that, "as a

direct and proximate result of defendant's negligence, plaintiff suffered extreme emotional

distress and embarrassment and incurred physical injuries [and that] Defendant Wallace carried

out his actions . . . with malice and his conduct was intentional and egregious." *Id*. ¶¶ 50, 51.

Although adding the word "negligence," this claim merely reiterates prior allegations of

intentional conduct. The plaintiff's negligence claim suffers the same deficiency. Accordingly, the court grants the defendants' motion to dismiss the plaintiff's negligent infliction of emotional distress and negligence claims for failure to state a claim. *Tafler*, 2006 WL 3254491, at *9 (applying *Chinn* and dismissing the plaintiff's negligent infliction of emotional distress claim because it failed to allege a claim that was separate and distinct from his intentional tort claims).

## IV.    CONCLUSION

For the foregoing reasons, the court grants the defendants' motion for summary judgment as to Count I, Count III, Count IV and Count VII. The court denies the defendants' motion for summary judgment as to Count VI. The court grants the defendants' motion to dismiss Counts V and IX. Upon mutual consent of the parties, the court dismisses Count II. An order consistent with this Memorandum Opinion is separately and contemporaneously issued this 31st day of March, 2008.


                                        RICARDO M. URBINA
                                        United States District Court